## A04A1714. RAINEY v. GAFVT MOTORS, INC.
### (604 SE2d 840)

ELLINGTON, Judge.

Henry F. Rainey appeals from the grant of summary judgment to GAFVT Motors, Inc. d/b/a Gwinnett Place Ford (hereinafter, "the dealership"). Rainey had sued the dealership, alleging that it committed fraud during the sale of a car by leading him to believe that he was guaranteeing a loan for his son when the loan was actually in his name as the purchaser. He also alleged the dealership forged his name on certain sales documents. On appeal, Rainey claims the trial court erred in finding that no material issues of fact remained that required jury determination. Finding no error, we affirm.

"To prevail on summary judgment, the moving party must show that no genuine issues of material fact remain to be tried and that the undisputed facts, viewed in the light most favorable to the non-movant, warrant summary judgment as a matter of law." (Citation omitted.) *Garcia v. Charles Evans BMW, Inc.*, 222 Ga. App. 121 (473 SE2d 588) (1996). Viewed in this light, the evidence showed that, on December 12, 2001, Rainey and his adult son, William Alton Rainey, went to the dealership to look at a Chevrolet Corvette convertible the son was interested in purchasing. The men talked to the salesman, who allowed the men to take a test drive. Before the men left the lot, Rainey gave the salesman his driver's license. When the men returned to the lot, the salesman told them that, because of the son's poor credit history, he would not be able to buy the car on his own, but that he could have "anything on the parking lot" if Rainey co-signed the loan.

Rainey and his son met with the salesman and an employee of the dealership's finance department. The finance employee gave Rainey several documents to sign for the purchase and financing of the car and explained each document to Rainey before he signed them. The employee witnessed Rainey sign the financing agreement and the rest of the sales documents. Each of these documents identified "Henry F. Rainey" as the purchaser of the car. Rainey admitted during his deposition that he signed several documents without

reading them and that he "really didn't know what [he] was signing." He deposed that he thought he was simply agreeing to guarantee a loan so his son could buy the car, because he knew his son would not be able to obtain credit on his own. Even so, Rainey admitted that he did not see his son sign any documents to purchase the car, and his son denied signing any sales documents. Neither the son's name nor his signature appears on any of the sales documents.

Rainey and his son drove the car to Rainey's home the same day. Rainey insured the car under his insurance policy. His son was not listed as a driver on the insurance policy. At some point shortly after the sale, Rainey received the car registration documents which showed "Henry F. Rainey" as the car owner. Rainey claims, however, that his son may have used his name to purchase the tag without his knowledge.

The payment book was sent to the son's address in January 2002, but listed Rainey's name as the debtor. The son called the dealership, which told him that there was no paperwork in his name and that the car was in Rainey's name only. The son called his dad a few days later and informed him that the car was solely in the name of "Henry F. Rainey."

Over the next several months, Rainey's son drove the car at least 15,000 miles. In August 2002, a dispute arose when the company providing credit life insurance on the loan cancelled its policy because Rainey was too old to qualify for the insurance. Rainey called the dealership, told them that he had purchased a Corvette from them, and complained that the credit life insurance on the loan had been cancelled. Rainey convinced the dealership to secure new insurance, and the premium was added to Rainey's loan balance. The dealership prepared new loan documents that showed the higher balance but offered a lower interest rate and lower monthly payment than Rainey's prior loan. When the dealership asked Rainey to sign the new loan documents, however, Rainey refused, insisting he could not afford to pay for the car. Rainey's wife deposed that the proposed payments were too high, but they would have been willing to sign the papers if the payment had been $300 to $400. The general manager of the dealership and the finance manager both deposed that, during their discussions with Rainey about the credit life insurance issue, Rainey never indicated that he had not purchased the Corvette or question why the contract was in his name instead of his son's.

Neither Rainey nor his son made any payments on the car after August 2002. Shortly thereafter, the bank that held the loan on the car notified Rainey that he was behind on his payments, but Rainey refused to pay, claiming he had not purchased the car. The bank sent Rainey an affidavit to complete regarding his allegations of fraud by the dealership. Included with the affidavit was a notice of the

criminal penalties for false swearing. Rainey failed to return the affidavit to the bank. The bank repossessed the car in early 2003.

Rainey filed suit against the dealership for fraud, alleging that the dealership led him to believe he was simply guaranteeing a loan so his son could purchase the car. He also alleged that someone at the dealership had signed his name on a credit application, the odometer statement, the tag application, and the credit life insurance application. During discovery, Rainey's expert witness deposed that someone other than Rainey probably signed or initialed these documents. But Rainey's expert also opined that it was "highly probable" that Rainey signed the remaining documents, including the financing agreement with the bank.

1. The trial court granted summary judgment to the dealership on Rainey's claims, and, on appeal, Rainey contends the court erred because there are disputed issues of fact concerning the alleged fraud and whether he attempted to rescind the contract after discovery of the fraud. As demonstrated below, these contentions do not present a basis to reverse the court's decision.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990). In this case, Rainey is unable to establish that he justifiably relied on the alleged misrepresentations or that he was damaged by the dealership's alleged fraudulent acts.

(a) In his complaint, Rainey contends that, when he signed the sales and loan documents, he believed that his son was purchasing the car and that he was simply co-signing or guaranteeing the loan. He admitted, however, that he signed several documents without reading them and that, even during the deposition, he did not know what he had signed while at the dealership. As we have previously held,

> [o]ne cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relation of trust or confidence exists. Further, in the absence of special circumstances[,] one must exercise ordinary diligence in making an independent verification of contractual terms and representations.

(Citations omitted.) *Hubert v. Beale Roofing*, 158 Ga. App. 145, 146 (279 SE2d 336) (1981). Failure to exercise such ordinary diligence will bar an action based on fraud. Id. "A party to a contract who can read must read or show a legal excuse for not doing so and ordinarily, if fraud is the excuse, it must be such fraud as to prevent the party

from reading." (Citation omitted.) *Curtis v. First Nat. Bank of Commerce*, 158 Ga. App. 379, 381 (1) (280 SE2d 404) (1981). "The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity." (Citation omitted.) *Crawford v. Williams*, 258 Ga. 806, 808 (375 SE2d 223) (1989).

There is no evidence in this case that anyone prevented Rainey from reading the terms of the contract or the other forms before him as he signed the documents, all of which explicitly listed "Henry F. Rainey" as the purchaser of the vehicle and none of which contained the name or signature of his son. Accordingly, Rainey is unable as a matter of law to demonstrate that he exercised any diligence in discovering the alleged fraud or that he justifiably relied on the dealership's alleged misrepresentations. *Hubert v. Beale Roofing*, 158 Ga. App. at 146; see also *Rivergate Corp. v. McIntosh*, 205 Ga. App. 189, 191 (421 SE2d 737) (1992) (defendant was entitled to summary judgment because plaintiff failed to read the contract he signed and, therefore, was unable as a matter of law to show that he reasonably relied on alleged misrepresentations by the defendant concerning the substance of the contract).

(b) Further, any fraud regarding Rainey's signature on the credit application was harmless, because the application would have been necessary anyway for Rainey to serve as a guarantor of the loan, as he allegedly intended. The same is true for the alleged falsification on the tag application, the credit life insurance application, and the odometer statement. Even though Rainey was aware that the car was registered in his name, he took no action to change that. Although Rainey now contends that his initials on the application for credit life insurance were forged, he not only accepted the insurance in his name, but, when it was abruptly cancelled by the insurance company in August 2002, he insisted that the dealership get the insurance reinstated. And there is simply no dispute in the record about the odometer reading at the time Rainey purchased the car.

Accordingly, he is estopped from complaining about these allegedly fraudulent signatures. See *Ferguson v. Bishop*, 150 Ga. App. 469, 472 (258 SE2d 143) (1979) (having accepted the proceeds of the sale of property following the execution of a deed on which someone allegedly forged his name, the plaintiff was barred from repudiating the signature in order to recover from the defendants for the forgery).

(c) Rainey complains that he was financially harmed[1] because he

---

[1] Notably, he also claims that he suffered "emotional problems" when he was forced to swear out a criminal warrant against his son for stealing the car in October 2002. It is unclear to this Court how these alleged damages are in any way related to the alleged fraud, unless it

only intended to guarantee his son's loan, not purchase the vehicle. Specifically, he claims he was harmed when the bank repossessed his car and won a deficit judgment against him, which also damaged his credit rating. The contract clearly states, however, that he would have been no less obligated for the entire loan amount as a guarantor than he was as the purchaser. The financing agreement contained the following provision:

> Obligations Independent: Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following: A. You must pay this Contract even if someone else has also signed it. B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract. . . .

Accordingly, Rainey is unable to show how he suffered a compensable harm by any alleged fraudulent act that resulted in him being the principal, not the guarantor, on the loan. See *Stiefel v. Schick*, 260 Ga. at 639 (2) (a party must show actual damages in order to sustain a fraud claim).

Since Rainey could not support the essential elements of his fraud claim under the undisputed facts presented, the evidence demanded judgment for the dealership as a matter of law.

2. Rainey also contends that a jury issue exists as to whether he attempted to rescind the contract after he discovered the alleged fraud.[2] This issue is moot, however, given our determination in Division 1, supra, that Rainey could not sustain his fraud claim.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 8, 2004.

*Clifford H. Hardwick*, for appellant.
*C. Davis Bauman*, for appellee.

---

is to remove all doubt that Rainey considered himself to be the owner of the car.

[2] See OCGA § 13-4-60 ("A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.").