A11A1122. GOSPEL TABERNACLE DELIVERANCE CHURCH, INC. et al. v. FROM THE HEART CHURCH MINISTRIES, INC. et al.

(718 SE2d 575)

ANDREWS, Judge.

From the Heart Church Ministries, Inc. and From the Heart Church Ministries — Atlanta, Inc. (collectively referred to as From the Heart) sued Gospel Tabernacle Deliverance Church, Inc. (Gospel Tabernacle), Wiley Jackson II, and Rodney B. Jackson, the Bishop and the Pastor of Gospel Tabernacle, respectively, claiming that the Jacksons made negligent misrepresentations about real property which induced From the Heart to purchase the property from Gospel Tabernacle. The suit alleged that, prior to the purchase, the Jacksons misrepresented that the property, on which a church was located, included adjacent land on which part of the parking lot used by the church was located. After the purchase closed, From the Heart discovered that the adjacent land was not owned by Gospel Tabernacle and was not part of the purchased property. While affirming the property purchase, From the Heart sought damages resulting from the misrepresentation. A jury rendered a verdict in favor of From the Heart for negligent misrepresentation and awarded damages in the amount of $50,400. Gospel Tabernacle and the Jacksons appeal claiming that the trial court erred by denying their motions for a directed verdict and for judgment notwithstanding the verdict made on the basis that the evidence showed, as a matter of law, that From the Heart failed prior to the purchase to exercise due diligence to discover the true boundaries of the property. We agree. For the following reasons, we find that the evidence was insufficient to sustain the verdict because From the Heart failed as a matter of law to exercise due diligence. Accordingly, we reverse the judgment

entered on the verdict and direct that judgment be entered by the trial court in favor of Gospel Tabernacle, Wiley Jackson II, and Rodney B. Jackson. OCGA §§ 9-11-50 (e); 5-6-36; *Aldworth Co. v. England*, 281 Ga. 197 (637 SE2d 198) (2006).

The parties entered into a purchase agreement prepared by Gospel Tabernacle's real estate agent which provided that the property to be purchased was described in an attached survey, or, if no survey was attached, then as described in deed book 36523, page 449 maintained by the Clerk of the Fulton County Superior Court and made a part of the agreement by reference. The attached survey showed not only the property owned and sold by Gospel Tabernacle pursuant to the purchase agreement but also an adjacent tract of land not owned by Gospel Tabernacle which was used for additional parking by the church located on the property. The survey showed lines with directions and distances which encompassed the property owned by Gospel Tabernacle and on which the church buildings were located. One of these lines was described on the survey as a "deed line" which separated an area within the Gospel Tabernacle property labeled "asphalt parking" from the adjacent land not owned by Gospel Tabernacle also labeled "asphalt parking." In contrast to the property owned by Gospel Tabernacle, the survey lines encompassing the adjacent land did not show distances and directions. Nothing on the survey specifically stated that the adjacent land was not owned by Gospel Tabernacle and was not part of the property offered for purchase.

The purchase agreement provided for a period of due diligence prior to closing to allow From the Heart an opportunity to "inspect, survey, examine, and test" the property and to terminate the agreement if From the Heart determined that it was not desirable to proceed with the purchase. During the due diligence period, From the Heart requested that Gospel Tabernacle provide another survey of the property to be purchased. John Cherry, the Episcopal Pastor and founder of From the Heart, testified that he requested the survey "to be certain . . . of what I was purchasing." Pursuant to this request, Gospel Tabernacle provided a second survey of the property to From the Heart. Like the survey attached to the purchase agreement, the second survey also showed the property owned by Gospel Tabernacle (encompassed by lines with directions and distances) and showed the portion of the Gospel Tabernacle property labeled "asphalt" separated by one of those lines from the adjacent land, also labeled "asphalt," which was not owned by Gospel Tabernacle. But the second survey contained additional information not contained on the survey attached to the purchase agreement. The second survey stated specifically that it was a boundary survey of the Gospel Tabernacle property, and it contained a written

paragraph on the face of the survey captioned "Legal Description" which set forth a metes and bounds description of the surveyed property following the directions and distances of the lines encompassing the property owned by Gospel Tabernacle. This metes and bounds description did not include the adjacent land shown on the second survey which was not owned by Gospel Tabernacle. Moreover, the second survey specifically described the adjacent land as being an area 70 feet over the surveyed property line. When shown the second survey on cross-examination, Pastor Cherry admitted that it contained a legal description of the property that did not include the adjacent land and that it showed on its face that the adjacent land was 70 feet over the property line. During the due diligence period, From the Heart also obtained a commitment for title insurance on the property to be purchased from Gospel Tabernacle. The title insurance commitment contained the same metes and bounds description of the property that was shown on the second survey and that excluded the adjacent land. Pastor Cherry also admitted that the survey attached to the purchase agreement showed a line described as a "deed line" which separated the Gospel Tabernacle property from the adjacent land. Furthermore, Pastor Cherry testified on direct examination that, without the portion of the parking lot located on the adjacent land not owned by Gospel Tabernacle, the Gospel Tabernacle property purchased by From the Heart had only 35 to 40 parking spaces. Pastor Cherry's estimate of the available parking spaces was consistent with a report provided to From the Heart during the due diligence period which showed that the property it was purchasing from Gospel Tabernacle had only 36 parking spaces.

In addition to receiving the above items during the due diligence period, Pastor Cherry testified that, prior to closing, he learned from a tenant who had occupied the church building that Gospel Tabernacle did not own the adjacent land on which a portion of the parking lot used by the church was located. After learning this, Pastor Cherry testified that he contacted Pastor Jackson who assured him that Gospel Tabernacle owned the entire parking lot. The record also shows that, at From the Heart's request, Gospel Tabernacle re-paved the entire parking lot during the due diligence period. According to Pastor Cherry, he relied on these assurances from Gospel Tabernacle that it owned the entire parking lot and closed the purchase without further inquiry. When the purchase of the property closed, the warranty deed from Gospel Tabernacle to From the Heart contained the same metes and bounds description of the property that was contained in the second survey; in the title insurance commitment; and in deed book 36523, page 449 as referenced in the purchase agreement — and none of these property descriptions included the

adjacent land not owned by Gospel Tabernacle. The Jacksons testified that, during the five years Gospel Tabernacle owned the church property before selling it to From the Heart, the church used the entire paved parking lot, including the paved portion located on the adjacent land, and that they mistakenly thought Gospel Tabernacle owned the adjacent land. Nevertheless, it is undisputed that Gospel Tabernacle never owned the adjacent land; that it was not part of the church property that Gospel Tabernacle previously acquired by recorded deed; and that the true ownership of the adjacent land was shown by recorded deeds maintained by the Clerk of the Fulton County Superior Court.

As with a fraudulent misrepresentation claim, justifiable reliance upon the false information is an essential element of a claim asserting negligent misrepresentation. *Anderson v. Atlanta Committee for the Olympic Games*, 261 Ga. App. 895, 900 (584 SE2d 16) (2003); *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (479 SE2d 727) (1997). Accordingly, where the evidence shows the plaintiff has failed as a matter of law to exercise due diligence to discover the truth, this shows an absence of justifiable reliance which bars recovery on a negligent misrepresentation claim. *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 771-772 (531 SE2d 200) (2000). "[A] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict. OCGA § 9-11-50 (a)." *St. Paul &c. Ins. Co. v. Meeks*, 270 Ga. 136, 137 (508 SE2d 646) (1998). Where the record shows as a matter of law the lack of any evidence sufficient to support an essential element of the non-movant's claim, a directed verdict is demanded. *Parsells v. Orkin Exterminating Co.*, 178 Ga. App. 51, 52 (342 SE2d 13) (1986). Because the evidence, construed in favor of From the Heart, shows as a matter of law that From the Heart failed to exercise the required due diligence, Gospel Tabernacle and the Jacksons were entitled to a directed verdict.

The record shows that, prior to closing, From the Heart learned from a tenant who had occupied the church building that there was a dispute about whether Gospel Tabernacle owned land adjacent to the church property on which part of the parking lot used by the church was located. Prior to closing, From the Heart also received: (1) a survey of the church property which clearly showed by metes and bounds description that the church property it was about to purchase did not include the adjacent land on which part of the parking lot was located; (2) a title insurance commitment containing the same metes and bounds description as the survey which confirmed that the adjacent land was not part of the church property;

and (3) a report on parking spaces available on the church property which showed that the church property did not include the extra parking spaces available on the adjacent land. Despite having this information about the property, From the Heart closed the purchase claiming reliance on mistaken and false assurances from Gospel Tabernacle that the adjacent land was part of the purchased property. Unless a purchaser of real property is fraudulently prevented from examining the property, or an examination would not have disclosed the falsity of a misrepresentation — neither of which was shown in this case — the rule is that "one cannot be permitted to claim that he has been deceived by false representations about which he could have learned the truth of the matter and could have avoided damage." (Citations and punctuation omitted.) *Lester v. Bird*, 200 Ga. App. 335, 338 (408 SE2d 147) (1991). Here, an examination of documents in possession of From the Heart prior to closing would have revealed that the adjacent land was not included within the boundaries of the purchased property. Except in plain and indisputable cases, whether a plaintiff could have protected himself from false information by the exercise of due diligence is for the jury. *Klusack v. Ward*, 234 Ga. App. 178, 179 (507 SE2d 1) (1998); *Lester*, 200 Ga. App. at 338. We find that the evidence is plain and indisputable that From the Heart failed as a matter of law to exercise due diligence to discover the true boundaries of the purchased property. Id. at 179-180.

*Judgment reversed with direction. Phipps, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 2, 2011.

*Emory A. Schwall, Robert S. Wayne*, for appellants.
*Stephen D. Apolinsky, Patrick J. Stubbs*, for appellees.