**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 13, 2016**

# In the Court of Appeals of Georgia

A16A0094. LIBERTY CAPITAL, LLC. ET AL. v. FIRST JE-004
    CHATHAM BANK.

ELLINGTON, Presiding Judge.

This is the second appearance in this Court of an action by First Chatham Bank against Liberty Capital, LLC to specifically enforce an agreement by Liberty Capital to purchase a loan related to the development of four residential lots, and for other relief. In *First Chatham Bank v. Liberty Capital*, *LLC*, 325 Ga. App. 821 (755 SE2d 219) (2014) (physical precedent only), we affirmed the trial court's denial of First Chatham's motion for summary judgment on its claim for specific performance. Following remand, the parties agreed to equitably reform the residential lot numbers identified in Liberty Capital's letter to First Chatham in which Liberty Capital committed to purchase the loan, after which First Chatham and Liberty Capital filed

cross-motions for summary judgment. The trial court granted First Chatham's motion for summary judgment and denied Liberty Capital's motion for summary judgment.

On appeal, Liberty Capital contends that the trial court erred by (i) granting summary judgment to First Chatham on its claim for specific performance, (ii) denying summary judgment to Liberty Capital on First Chatham's claims for fraud and misrepresentation, (iii) failing to transfer the case to Cobb County, Georgia, where venue was proper, and (iv) granting summary judgment to First Chatham while there remained genuine issues of material fact. For the reasons set forth below, we hold that the trial court erred in granting summary judgment to First Chatham on its claim for specific performance and in denying Liberty Capital's motion for summary judgment on First Chatham's claims for negligent misrepresentation and fraud. We find Liberty Capital's contention that the trial court erred in failing to transfer this case to be abandoned. Accordingly, we affirm in part and reverse in part.

Under OCGA § 9-11-56 (c),

> [s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the

2

reasonable inferences drawn therefrom, in a light most favorable

to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014).

The record shows that in 2007, Best Custom Homes, LLC ("Best Homes") entered into an agreement to buy four lots in Hampton Island Village development in Liberty County, Georgia, from Hampton Island, LLC, an affiliate of Liberty Capital. To encourage First Chatham to extend a loan to Best Homes to fund the purchase, Liberty Capital delivered a commitment letter, dated January 11, 2008, to First Chatham. The January 11, 2008 letter provided that it was regarding: "Sale of Lots T004, T005, T007 and TL10 (the 'Lots') by Hampton Island, LLC ('Seller') to Best Custom Homes, LLC ('Purchaser'), such acquisition to be financed by a loan (the 'Acquisition Loan') from First Chatham Bank ('Lender')." The January 11, 2008 letter further provided, in pertinent part, that

> This letter represents Liberty Capital's commitment that if the speculative residences to be constructed on the Lots by Purchaser from the proceeds of the Acquisition Loan are for any reason not sold by the second anniversary of the Acquisition Loan closing date, Purchaser, within sixty (60) days following receipt of written demand by Lender

3

provided within 90 days following such second anniversary, will purchase the Acquisition Loan from Lender.

Liberty Capital "acknowledge[d] that the provision of this letter agreement for the benefit of Lender constitutes a material inducement to Lender's willingness to make the Acquisition Loan to facilitate the acquisition of the Lots by Purchaser from Seller."

Also on January 11, 2008, First Chatham committed, pending the receipt and review of the "buy-back letter" from Liberty Capital, to provide a loan to Best Homes to fund the purchase of the lots and construction of homes at Hampton Island to be secured by "Lots V4, V7, V10, and V14." Notwithstanding that the January 11, 2008 letter referred to Lots 4, 5, *7*, and 10, and First Chatham's commitment referred to Lots 4, *7*, 10, and *14*, Best Homes purchased on January 14, 2008, with the proceeds of the loan, four lots identified as Lots 4, 5, *9*, and 10. In connection with that transaction, Best Homes executed a Commercial Promissory Note in the principal amount of $2,390,898 (the "Note").

Two years thereafter, on January 14, 2010, First Chatham notified Liberty Capital that it was demanding that Liberty Capital purchase the Acquisition Loan because the preconditions of the January 11, 2008 letter had been met, including that

4

the residences on the lots purchased with the Acquisition Loan had not been sold. On February 9, 2010, Liberty Capital responded with a letter indicating that it would not honor First Chatham's demand.

On January 5, 2011, First Chatham sued Liberty Capital for specific performance, breach of contract, and negligent misrepresentation. First Chatham named Best Homes, Genesis Designer Homes, LLC, Richard E. Best, and Jill M. Alba as co-defendants. The claims against the co-defendants included a suit on the Note against Best Homes and a claim against Genesis Designer Homes, Best, and Alba for breach of their personal guaranties of the Note. First Chatham later amended the complaint to assert claims against Liberty Captial for fraud and equitable reformation of the January 11, 2008 letter.

First Chatham moved for summary judgment on its claim for specific performance. The trial court denied the motion for summary judgment because the terms of the contract, as reflected in the respective commitments of Liberty Capital and First Chatham, were inconsistent, and issues of material fact remained as to the terms of their agreement. On interlocutory appeal, we affirmed the trial court's judgment as there remained a genuine issue of material fact as to the essential terms

5

of the parties' agreement. *First Chatham Bank v. Liberty Capital, LLC*, 325 Ga. App. at 828 (2).

Following remand, the parties stipulated and agreed to a consent order that, "to resolve an uncertain claim," the January 11, 2008 letter be equitably reformed to reference "Lots TL 04, TL 05, TL 09, and TL 10." Liberty Capital and First Chatham then filed cross-motions for summary judgment. The trial court granted First Chatham's motion for summary judgment as to its claim for specific performance, found that its breach of contract claim was moot, and denied Liberty Capital's motion for summary judgment as to First Chatham's claims for negligent misrepresentation and fraud.

1. Liberty Capital contends that the trial court erred in granting First Chatham's motion for summary judgment on its claim for specific performance because First Chatham did not establish that it did not have an adequate remedy at law through an award of damages.[1] As the movant for summary judgment, First Chatham was required to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. See OCGA § 9-11-56 (c); *Lindgren v. Dowis*,

---

[1] Liberty Capital also contends that summary judgment was improper because the parties' agreement was (i) too vague to be enforced by specific performance and (ii) not within their power to perform, but we do not reach these additional arguments.

6

236 Ga. 278, 280-281 (3) (223 SE2d 682) (1976) (trial court did not err in denying seller's motion for summary judgment for specific performance of an agreement for the purchase and sale of stock as he did not show there was no issue of fact as to laches).

Under Georgia law, "[s]pecific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance." OCGA § 23-2-130. "Equitable relief is improper if the complainant has a remedy at law which is adequate, i.e., as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." (Citation and punctuation omitted.) *Besser v. Rule*, 270 Ga. 473, 475 (510 SE2d 530) (1999).

In arguing that specific performance is the appropriate remedy in this case, First Chatham relies on authorities which address loan "repurchase" obligations. For example, in *Sun American Bank v. Fairfield Financial Svcs.*, 690 FSupp2d 1342 (M.D. Ga. 2010), an authority relied upon by First Chatham, the defendant bank sold participation interests in a loan it had originated to other banks, including the plaintiff's predecessor in interest, in order to reduce its overall risk exposure. Id. at 1344. The repurchase obligation was the parties' agreed-upon remedy for a breach of

the underlying participation agreement. Id. at 1365 (III). While the court, applying Georgia law, found specific performance of the repurchase obligation to be one of several remedies available to the plaintiff, it relied on the principle that "[s]pecific performance is generally available whenever the damages recoverable at law would not be an adequate compensation for nonperformance." Id. at 1368 (III) (citation and punctuation omitted). And the damages for the underlying breach of the participation agreement, which pertained to the originating bank's disclosure obligations, were impossible to calculate, such that the originating bank's repurchase of the participation interest was the most reasonable means of restoring the parties to the position they would have been in absent the breach. See id. ("Precise legal damages would be impossible to calculate because such calculation would require speculation into what [the participating bank] would have done with the information [the originating bank] was obligated to disclose."). Here, there is no underlying breach for which legal damages are impossible to calculate. Rather, Liberty Capital's failure to purchase the Acquisition Loan is the breach at issue and is not the parties' agreed-upon remedy for the breach.

This Court has found that the failure to honor a loan repurchase obligation triggered by a breach of the parties' agreement to be, in itself, a breach of the

contract. See *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 907 (3) (b) (775 SE2d 243) (2015); *Cleveland Motor Cars, Inc. v. Bank of America*, 295 Ga. App. 100, 103 (670 SE2d 892) (2008); *Rod's Auto Finance, Inc. v. Finance Co.*, 211 Ga. App. 63, 64-65 (438 SE2d 175) (1993). Thus, a failure to timely repurchase a participation interest in a loan upon proof of a material default is "an independent breach of the participation agreement that, if proven, would entitle [the participating bank] to pursue money damages for the alleged failure to repurchase." *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 907 (3) (b) (775 SE2d 243) (2015) (citations and punctuation omitted). In reaching this conclusion in *2010-1 SFG Venture LLC*, we noted the observation of a federal district court that "[t]he payment of the liquidation price of a loan is payment of an amount of money, which is completely fungible . . . . There is [thus] no practical difference between this 'repurchase' remedy and compensatory damages." Id. at 907 (3) (b) (quoting *ORIX Real Estate Capital Markets, LLC v. Superior Bank, FSB*, 127 FSupp2d 981, 983 (II) (A) (N.D. Ill. 2000)). First Chatham's reliance on the jurisprudence of "repurchase" agreements does not establish that it is entitled to the remedy of specific performance. Indeed, our holding in *2010-1 SFG Venture LLC*

9

suggests that an award of damages may be an adequate remedy for the failure to honor a repurchase obligation.

Nevertheless, First Chatham also argues that specific performance is the appropriate remedy here because the measure of damages resulting from Liberty Capital's non-performance is uncertain or difficult to ascertain. See *Gabrell v. Byers*, 178 Ga. 16, 21 (172 SE2d 227) (1933) (noting that, notwithstanding the general rule that specific performance of contracts in relation to personal property will not be enforced, specific performance is available where "the measure of damages resulting from the non-performance of the contract is uncertain or difficult of ascertainment."). Compare *Duval & Co. v. Malcom*, 233 Ga. 784, 788 (214 SE2d 356) (1975) ("The general rule is that specific performance of contracts in relation to personal property will not be enforced, for the reason that ordinarily compensation for breach of contract may be had by way of an action at law for damages.") (citation and punctuation omitted). First Chatham presented this argument more fully in its briefing below, wherein it contended that it was injured by not being paid the agreed-upon purchase price of the Acquisition Loan, but also in "that it has had to carry the risk of carrying a non-performing loan beyond the two years that it bargained for." First Chatham asserted that this "injury was difficult to calculate" and therefore "the best,

10

and fairest, remedy" was to require Liberty Capital to specifically perform its loan purchase obligation.

In a breach of contract case, the measure of damages "is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured is so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed." (Citations and punctuation omitted.) *Bennett v. Associated Food Stores*, 118 Ga. App. 711, 715 (2) (165 SE2d 581) (1968). Here, if the parties' contract had been performed, First Chatham would have received the purchase price of the Acquisition Loan but would no longer hold the Acquisition Loan. An award of money damages could adequately compensate First Chatham insofar as Liberty Capital's failure to pay the purchase price of the Acquisition Loan, and thus place it in the same position as had the parties' contract been performed. First Chatham contends that holding the Acquisition Loan will result in economic injury by exposing it to unforeseen expenses. However, to the extent that First Chatham incurs out-of-pocket costs during the course of the litigation on account of having to service the Acquisition Loan, it does not show that these

amounts are difficult to calculate.[2] Accordingly, we conclude that First Chatham did not show that there was no genuine issue of material fact as to the adequacy of damages as the legal remedy for nonperformance. Consequently, the trial court erred in awarding summary judgment on its claim for specific performance.

2. Liberty Capital further contends that the trial court erred in denying its motion for summary judgment on First Chatham's claims for negligent misrepresentation and fraud. We agree. Because, as set out more fully below, First Chatham failed to exercise its requisite due diligence, these claims fail as a matter of law.

(a) *Negligent Misrepresentation.* As to its claim for negligent misrepresentation, First Chatham contends that Liberty Capital's representation in the Letter Agreement that it would purchase the Acquisition Loan from First Chatham used to finance the sale of "Lots T004, T005, T007 and TL10" from Hampton Island LLC to Best Homes was either false or mistaken in that the lots actually being sold

---

[2] We note that, although First Chatham describes the Acquisition Loan in terms of its costs and risk to First Chatham, the Acquisition Loan is also an asset and, as such, might have residual value to the holder. However, First Chatham does not contend that the measure of damages should account for the fair market value of the Acquisition Loan, nor did it come forward with any evidence as to the Acquisition Loan's value or lack thereof, or as to whether any such value is impossible or difficult to calculate.

12

by Hampton Island LLC to Best Homes were lots TL 04, TL 05, TL 09, and TL 10. First Chatham alleges that Liberty Capital was negligent in describing the wrong lots and in failing to correct the error. And, First Chatham, maintains, Liberty Capital knew that First Chatham was relying on the Letter Agreement in finalizing the Acquisition Loan for the sale of lots TL 04, TL 05, TL 09, and TL 10; that First Capital was justified in relying upon Liberty Capital's representations in making the Acquisition Loan; and that it was damaged as a proximate result.

The elements of a claim for negligent misrepresentation are: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." (Footnote omitted.) *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997). "[J]ustifiable reliance is an essential element of a claim asserting negligent misrepresentation." (Footnote omitted.) *Anderson v. Atlanta Committee for the Olympic Games, Inc.*, 261 Ga. App. 895, 900 (2) (584 SE2d 16) (2003). And "[t]o show justifiable reliance, the plaintiff must establish that he exercised his duty of due diligence." (Citations omitted) *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. at 840 (1) (d). See *Artzner v. A & A*

13

*Exterminators, Inc.*, 242 Ga. App. 766, 771-772 (2) (531 SE2d 200) (2000) (justifiable reliance is an essential element of a claim for negligent misrepresentation, and a plaintiff's failure to exercise due diligence will bar a claim for negligent misrepresentation). Whether a plaintiff could have protected itself by the exercise of due diligence is generally a question for the jury; however, "an exception occurs when a plaintiff cannot offer evidence that he exercised his duty of due diligence to ascertain the truth and to avoid damage." (Citation omitted.) *Walden v. Smith*, 249 Ga. App. 32, 35 (1) (546 SE2d 808) (2001).

To the extent that Liberty Capital was negligent in failing to accurately state the lot numbers in the January 11, 2008 letter, or in failing to correct that mistake, that misrepresentation was apparent on the face of the document. First Chatham was also aware of the correct lot numbers when it extended the Acquisition Loan to Best Homes, as those numbers were set forth in the loan documentation. Thus, First Chatham could have discovered that it was not extending a loan for the purchase of the lot numbers set forth in the January 11, 2008 letter by reading that document, which, in the exercise of reasonable diligence, it was required to do. See, e.g., *Terry Brantley Greenbriar Rental & Sales, Inc. v. Davis*, 172 Ga. App. 107, 108 (321 SE2d 829) (1984) ("A party to a contract who can read must read or show a legal excuse

14

for not doing so.") (citation and punctuation omitted). Further, "[i]n the absence of special circumstances, one must exercise ordinary diligence in making an independent verification of contractual terms and representations." (Citation and punctuation omitted.) *Rainey v. GAFVT Motors, Inc.*, 269 Ga. App. 479, 481 (1) (a) (604 SE2d 840) (2004). As First Chatham failed to exercise ordinary diligence in protecting itself from the alleged misrepresentation in the January 11, 2008 letter, it cannot establish the element of justifiable reliance, and its claim for negligence misrepresentation fails as a matter of law. See, e.g., *Gospel Tabernacle Deliverance Church, Inc. v. From the Heart Church Ministries, Inc.*, 312 Ga. App. 355, 359 (718 SE2d 575) (2011) (where the falsity of the alleged negligent misrepresentation would have been revealed by examination of documents in plaintiffs' possession, the plaintiffs, as a matter of law, failed to exercise due diligence).

(b) *Fraud.* First Chatham contends that Liberty Capital committed fraud in that it intentionally misrepresented the lot numbers set forth in the January 11, 2008 letter with the goal of avoiding future performance. To show fraud, a plaintiff must establish "(1) false representation by defendant; (2) scienter [or knowledge of the alleged falsehood]; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." (Citation and

15

punctuation omitted.) *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 838-839 (1) (752 SE2d 18) (2013).

As in the case of its claim for negligent misrepresentation, the alleged deceit was apparent on the face of the January 11, 2008 letter, and First Chatham's failure to exercise due diligence precluded it from establishing the element of justifiable reliance. "Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence." (Citation and punctuation omitted.) *Isbell v. Credit Nation Lending Serv.*, LLC, 319 Ga. App. 19, 26 (2) (b) (735 SE2d 46) (2012).

3. Liberty Capital contends that the trial court erred in exercising jurisdiction over it and denying its motion to transfer the case to the Superior Court of Cobb County, where it alleges venue lies. Generally, venue in civil proceedings against domestic and foreign corporations lies "in the county of this state where the corporation maintains its registered office." OCGA § 14-2-510 (b) (1). See Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. ("[V]enue as to corporations, foreign and domestic, shall be as provided by law."). It is undisputed that Liberty Capital maintains its registered office in Cobb County. However, First Chatham contended below, and the

16

trial court found, that venue as to the tort claims against Liberty Capital lay in Chatham County under OCGA § 14-2-510 (b) (4), which provides, in pertinent part, that domestic corporations and foreign corporations authorized to transact business in Georgia "shall be deemed to reside and to be subject to venue as follows: [i]n actions for damages because of torts, wrong, or injury done, in the county where the cause of action originated." First Chatham also contended below that the trial court had the discretion to consider its claims for breach of contract and specific performance under the principle of pendent venue because those claims arose from the same transaction as the tort claims. See *Natpar Corp. v. E. T. Kassinger*, 258 Ga. 102, 104 (1) (365 SE2d 442) (1988) ("Where a plaintiff brings suit in the same county on two claims arising from the same transaction and the Georgia Constitution designates that county as the venue for one of those claims, the trial court has the discretion to entertain both claims."); *C.W. Matthews Contractor Co. v. Barnett*, 219 Ga. App. 763, 765 (3) (466 SE2d 657) (1996) (accord).

Liberty Capital maintains that the trial court erred in failing to transfer the case because it was not jointly liable with the resident co-defendants, either as joint tortfeasors or as joint obligors. But Liberty Capital does not address whether venue as to the tort claims was proper in Chatham County under OCGA § 14-2-510 (b) (4),

17

as the trial court found. Liberty Capital also suggests that, inasmuch as it is entitled to summary judgment on the tort claims, venue will become improper as to the remaining contract claims once partial summary judgment is entered its favor, and that this Court should therefore instruct the trial court to transfer the case to Cobb County. However, Liberty Capital does not support this assertion by either argument or citation to authority. See Court of Appeals Rule 25 (c) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."). For the foregoing reasons, we deem this claim of error to be abandoned.

4. Lastly, Liberty Capital contends that issues of material fact precluded summary judgment. We find this claim of error to be moot in light of our findings in Division 1, supra.

*Judgment affirmed in part and reversed in part. Mercier, J., concurs. Branch, J., concurs in Divisions 2, 3, and 4, and concurs in judgment only as to Division 1.*