**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2018**

# In the Court of Appeals of Georgia

A18A0072. BPP069, LLC v. LINDFIELD HOLDINGS, LLC et al.

BROWN, Judge.

BPP069, LLC ("the buyer") appeals from the trial court's order granting summary judgment in favor of Lindfield Holdings, LLC and Damon Barner (collectively "the defendants") on its complaint for fraud arising out of the sale of real property in the City of Newnan ("the City"). The buyer asserts that its fraud claim should have been submitted to the jury because (1) the defendants "knowingly misrepresented the zoning status of the property and concealed the fact that the City intended to demolish the property"; and (2) the buyer should not be charged with constructive knowledge of demolition orders filed outside the chain of title. For the reasons explained below, we affirm the portion of the trial court's order granting summary judgment to the defendants for their alleged misrepresentations regarding

zoning. We reverse the trial court's conclusion that the defendants were entitled to summary judgment in connection with alleged misrepresentations regarding the City's planned demolition of the property.

> Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party.

(Citation and punctuation omitted.) *Seki v. Groupon, Inc.*, 333 Ga. App. 319 (775 SE2d 776) (2015).

In the summer of 2012, the two parcels ultimately sold to the buyer were foreclosed upon by Wells Fargo Bank, NA, as trustee for two different loan trust entities. These parcels were zoned Urban Rural - Historical Infill (RU-I) by the City and have a street address of 4 and 6 St. Clair Street. While this zoning prohibits multi-family housing, the parcels at issue had been granted a legal non-conforming use status. According to a city planner, "[a] property's legal non-conforming use may be verified by completing an Application for Zoning Verification, attainable from the City of Newnan Planning and Zoning Department."

In August 2013, the City posted on the parcels a notice of non-compliance with Sec. 1.040 (3) of its zoning ordinance.[1] In September 2013, the City passed resolutions declaring the buildings on the parcels "unsafe building[s]." The resolutions, which were recorded in the public record on October 21, 2013, authorized the City to repair or demolish the buildings if the owner failed to do so within 60 days. On November 7, 2013, the City posted a notice on the parcels that the buildings had been declared unsafe. On November 14, 2013, the City posted on the parcels notices of demolition that referenced its September resolutions regarding repair or demolition. In March 2014, the City determined that the property had not been used as multi-family housing for over six months.

In early July 2014, Lindfield Holdings received title to the parcels from Wells Fargo, in its capacity as trustee, through separate quitclaim deeds. Five days after it obtained title for both of the parcels, Lindfield Holdings entered into a purchase and sale agreement with the buyer. Barner, a member and agent of Lindfield Holdings, signed the contract on its behalf. The contract provided that the "Seller warrants that

---

[1] A copy of this ordinance does not appear in the record before us, and this Court may not take judicial notice of city ordinances. See *College Park v. Flynn*, 248 Ga. 222, 223 (282 SE2d 69) (1981). Accordingly, we cannot verify the claim by defendants on appeal that this ordinance pertains "to an antecedent illegal sub-division of the [parcels]."

at the time of closing Seller will convey good and marketable title to said Property by general warranty deed subject only to: (1) zoning." The contract entitled the buyer to "examine title and furnish Seller with a written statement of title objections at or prior to the closing." Finally, the buyer was granted a seven day due diligence period, during which the buyer could "determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property."

According to Barner's affidavit, the notices posted by the City with regard to noncompliance with the zoning ordinance, unsafe buildings, and demolition remained posted on the property throughout the transaction for the sale of the parcels to the buyer. Barner alleged in his affidavit that "Defendants disclosed the existence of these notices to [the buyer's realtor,] Kelly Brown," but he provided no details about the disclosure or *when* it took place. Brown submitted an affidavit stating that she showed the property to a representative of the buyer "on numerous occasions" and that "[f]rom [her] initial showing of the property through the closing of the property . . . , there were no demolition notices or other notices posted on the property." She denied that Lindfield Holdings or its CFO, William Davidson, ever told her "that the property was under a demolition order and had lost its non[-]conf[o]rming use pursuant to the county zoning ordinance." Davidson "only told [her] that there was

4

an issue with the back title as a result of a previous foreclosure [and] that he was having the title fixed."

The demolition resolutions recorded for each parcel do not include a legal description. Depending upon how it is viewed, the resolutions either list the wrong street address for the owner identified or identify the wrong owner for the street address listed. Specifically, the demolition resolution against 4 St. Clair Street lists the name of the owner of 6 St. Clair Street, and the demolition resolution against 6 St. Clair Street lists the name of the owner of 4 St. Clair Street.[2]

A real estate closing attorney submitted an affidavit for the buyer stating that he had reviewed the "abstract of the title" used for the closing between the buyer and Lindfield Holdings.[3] Based upon his review of the documents, he opined that "[a] title

---

[2] A resolution listing the trust for 4 St. Clair Street as "Asset-Backed Certificates Corporation Home Equity Loan Trust, Series OOMC 2205-HE6, Asset Backed Pass Through Certificates, Series OOMC 2005-HE6, cross-references a foreclosure deed listing the same trust as the owner of the parcel. However, this trust owned 6 St. Clair Street, not 4 St. Clair Street.

Similarly, a resolution listing the trust for 6 St. Clair Street as "Option One Mortgage Loan Trust 2006-1, Asset-Backed Certificates, Series 2006-1," cross-references a foreclosure deed listing the same trust as the owner of the parcel. But this trust owned 4 St. Clair Street, not 6 St. Clair St.

[3] It appears this attorney performed a title search for the buyer before the July 30, 2014 closing. In a different affidavit, he states that he was contacted by the buyer "to run a title search on 4 & 6 St. Claire St." and that in July 2014, he "pulled the

5

search of [the parcels] using the standard title examination methods would not reveal the demolition orders as being *in the chain of title*." (Emphasis supplied.) He then opined that "[t]he two . . . demolition resolutions are not in the chain of title for this property and this error is the reason why the demolition orders were not disclosed through the due diligence of [the buyer]." Under his view, the resolutions listed the wrong owner for the street address listed rather than the wrong street address for the owner listed. His affidavit does not address whether someone searching the public record for both parcels[4] should have discovered the discrepancy in the resolutions since each incorrectly listed either the other's street address or owner.

Lindfield Holdings' sale of the parcels to the buyer closed on July 30, 2014, and the quitclaim deeds executed earlier in the month that conveyed title to Lindfield Holdings were recorded the following day. During the closing, Barner signed a seller's affidavit in which he swore that there were no encumbrances of record affecting title to the parcels and that good merchantable title could be conveyed free

---

back title on the property . . . [,]reviewed the standard title work up on the property[,] and [saw] no evidence of a demolition order in the chain of title."

    [4] The purchase and sale agreement identified "4 & 6 St. Clair St." as the property to be sold.

and clear of liens and encumbrances other than taxes for the year 2014 and those not yet due and payable.

On August 8, 2014, William Davidson, the CFO of Lindfield Holdings, filed an "Application for Special Exception" with the City to change the "allegedly single family" zoning classification for the parcels to "multi family." The application completed by Davidson lists Lindfield Holdings as the property owner even though the parcels had been sold a week before.[5] On September 2, 2014, a city planner recommended that the special exception request be denied. The city planner noted in his report that Lindfield Holdings "was informed of all the non-conforming issues surrounding [the parcels] prior to the purchase of the [parcels] and entered into the transaction with full knowledge of the fact that these apartments were non-conforming and may not be allowed to continue." The City denied the application for a special exception and the multi-family apartment buildings on the parcels were demolished by the City sometime before mid-December 2014. In January 2015, the buyer received bills from the City totaling $17,179.90 for the demolition of the buildings.

---

[5] The deeds providing title to the buyer were not recorded until August 13, 2014.

The buyer filed suit against Lindfield Holdings, Barner, and Davidson, but was unable to obtain service upon Davidson. In its complaint, the buyer asserted causes of action for breach of contract, fraud, and negligent misrepresentation and sought to rescind the contract in addition to recovering general and special damages, attorney fees, costs, and punitive damages. The specific misrepresentations asserted in the complaint include: the defendants "represented the Property as being multi-family development having a total of eight (8) units and as being in compliance with local, state and federal laws"; the defendants failed to disclose "the loss of the [parcels'] non-conforming use status, nor the City's two demolition Resolutions"; and the defendants misrepresented themselves as the owners of the parcels after the closing and applied for a special exception to the city's zoning ordinance to allow the property to be used as multi-family housing.

Lindfield Holdings and Barner filed a motion for summary judgment asserting that all of the buyer's claims fail because it cannot demonstrate "justifiable reliance on the alleged misrepresentations and concealments." They also argued that the buyer's cause of action for breach of contract is barred by the buyer's conduct in seeking to rescind the contract both before the complaint was filed and in the complaint itself. The defendants asserted no other grounds for summary judgment in

8

their favor. After holding a hearing and requesting supplemental briefs from the parties,[6] the trial court granted the defendants' motion for summary judgment.

On appeal, the buyer asserts that the trial court erred by granting summary judgment on its fraud claim because the defendants "knowingly misrepresented the zoning status of the property and concealed the fact that the City intended to demolish the property. . . ." One of its enumerations of error is broad enough to encompass alleged error by the trial court in granting summary judgment to the defendants on its breach of contract, negligent misrepresentation claims, and fraud based upon the defendants' efforts to apply for a zoning exemption after closing. However, the buyer makes no specific argument with regard to these claims in its brief. We therefore find that any such claims of error have been abandoned. See Court of Appeals Rule 25 (c) (2) (enumerations of error that are not supported in brief by citation of authority or argument may be deemed abandoned).

> The tort of fraud has five elements: (1) false representation by a
> defendant; (2) scienter; (3) intention to induce the plaintiffs to act or
> refrain from acting; (4) justifiable reliance by plaintiffs; and (5) damage

---

[6] The trial court requested supplemental briefs "addressing whether [the buyer] satisfied its burden of due diligence in hiring an attorney to conduct a title search and whether the attorney's failure to discover the Demolition Resolutions should or should not be imputed to [the buyer]."

to plaintiffs. Failure to show, in opposition to summary judgment, some evidence from which each element could be found by a jury allows the action to be disposed of summarily.

(Citation, punctuation and footnote omitted.) *Bickerstaff Real Estate Mgmt. v. Hanners*, 292 Ga. App. 554, 558-559 (2) (665 SE2d 705) (2008).

The law in Georgia is well-settled that in the purchase and sale of real estate there is an underlying principle of law that one cannot be permitted to claim that he has been deceived by false representations about which he could have learned the truth of the matter and could have avoided damage. When the means of knowledge are at hand and equally available to both parties if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller.

(Citation and punctuation omitted.) *Fowler v. Overby*, 223 Ga. App. 803, 803-804 (1) (478 SE2d 919) (1996). "When a buyer could have protected himself by the exercise of due diligence, he cannot show justifiable reliance on his part." *Walden v. Smith*, 249 Ga. App. 32, 35 (1) (546 SE2d 808) (2001). "Whether a plaintiff could have protected itself by the exercise of due diligence is generally a question for the jury; however, an exception occurs when a plaintiff cannot offer evidence that he exercised his duty of due diligence to ascertain the truth and to avoid damage." (Citation and

10

punctuation omitted.) *Liberty Capital v. First Chatham Bank*, 338 Ga. App. 48, 54 (2) (a) (789 SE2d 303) (2016).

1. The buyer contends that issues of fact exist with regard to its ability to discover the demolition resolutions that were recorded in the public record. In its complaint, the buyer asserted that the defendants were responsible for conducting a title examination and presenting the findings to the buyer through the defendants' attorney. According to the buyer, the defendants "failed to locate and disclose the resolutions . . . that were available in the public records." The buyer changed its theory in response to the defendants' motion for summary judgment, arguing instead that it exercised due diligence because it "performed two (2) title searches of the property and was unable to discover the demolition resolutions . . . because [they] were filed against the incorrect owners of each of the two (2) parcels of property." In the buyer's view, the resolutions are outside the chain of title because they listed the incorrect owner, and "a purchaser is not charged with notice of instruments that are not recorded in the chain of title."

The defendants assert that "because [the buyer] was purchasing both [parcels], each of the recorded Demolition Resolutions should have been discovered under an ownership search, had the title search been properly performed, even if the discovery

11

pertained to the other respective property." In their view, the error in the resolutions is "that the descriptions of each of the St. Clair [parcels] within the text of the Demolition Resolutions bore street numbers that did not match the respective properties legally described in the cross-referenced deeds." Unlike the buyers, the defendants did not submit an expert affidavit on the issue of whether a title search should have revealed the demolition orders.

OCGA § 23-1-17 provides: "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be the equivalent to knowledge in fixing the rights of parties." See also *Reidling v. Holcomb*, 225 Ga. App. 229, 231 (1) (483 SE2d 624) (1997). "For more than a century, it has been recognized that a purchaser of land in this state is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." (Citations and punctuation omitted.) *Deljoo v. SunTrust Mortgage*, 284 Ga. 438, 439 (668 SE2d 245) (2008). Indeed, Georgia law provides for "broad constructive notice upon recording." Id. at 440. Accordingly, "[a] purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title."

12

*Virginia Highland Civic Assn. v. Paces Properties*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001). "Chain of title includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument." (Citation and punctuation omitted.) *Suntrust Bank v. Equity Bank*, 312 Ga. App. 644, 645 (719 SE2d 539) (2011). Finally, we have held that an incorrect property description in a deed will not necessarily render the deed "invalid and take it out of the chain of title." Id.

> It is only when a description of property is manifestly too meager, imperfect, or uncertain to serve as adequate means of identification that the court can adjudge the description insufficient as a matter of law. Indeed, while the description may be inaccurate, meager or erroneous, yet if it is expressed in such a manner or connected with such attendant circumstances as that a purchaser should be deemed to be put upon inquiry, if he fails to prosecute this inquiry he is chargeable with all the notice he might have obtained had he done so.

(Citation and punctuation omitted.) Id. at 645-646.

On the other hand, the Supreme Court of Georgia has held that "the location of information in public records does not necessarily defeat a claim of passive concealment." *Akins v. Couch*, 271 Ga. 276, 279 (518 SE2d 674) (1999) (holding jury issue existed on whether buyer's claim for rescission of a contract to purchase house

13

was barred by their failure to exercise due diligence in inspecting health department records for sewer clearance letter). See also *Wiederhold v. Smith*, 203 Ga. App. 877 (418 SE2d 141) (1992) (failure to check records of county's public works department and discover hold on issuance of building permit until street in front of lot was laterally supported did not preclude claim for passive concealment). Passive concealment arises when "the seller knows of a material defect and does not attempt to hide the problem from the prospective buyer and he does not prevaricate. He simply keeps his mouth shut." (Citation and punctuation omitted.) *Cendant Mobility Financial Corp. v. Asuamah*, 285 Ga. 818, 820, n. 2 (684 SE2d 617) (2009).

In this case, we must determine whether the buyer should be presumed to have had constructive notice of the demolition resolutions located in the public record as a matter of law. The buyer has presented evidence from an expert opining that standard title examination methods would not have revealed the demolition orders as being in the chain of title. Based upon the error appearing on the face of the demolition orders with regard to the owner (or the property address), together with the expert evidence submitted by the buyer, we cannot conclude that the buyer had constructive notice of the demolition orders as a matter of law. See *Baxter v. Bayview Loan Servicing*, 301 Ga. App. 577, 586 (1) (b) (688 SE2d 363) (2009) (finding issues

14

of fact existed as to whether party had constructive notice of lis pendens; title search performed for the party did not reveal the lis pendens and record was incomplete on reasons why the lis pendens was not discovered during title search). Although the conclusion that the buyer should have discovered the demolition orders is "*authorized by the evidence, this conclusion [is] not demanded by the evidence.*" (Emphasis in original.) *Johnson v. GAPVT Motors*, 292 Ga. App. 79, 83 (1) (663 SE2d 779) (2008) (reversing trial court's grant of summary judgment on buyer's fraud claim). We therefore reverse the portion of the trial court's order granting summary judgment in favor of the defendants on fraud associated with the demolition resolutions.[7]

2. We find no merit in the buyer's assertion that it should be allowed to proceed on the portion of its fraud claim based upon the defendants' alleged misrepresentations regarding the zoning of the property.

---

[7] The general allegation in Barner's affidavit that the defendants disclosed the existence of the demolition notices to the buyer's realtor does not mandate summary judgment in their favor as there is insufficient detail about *when* the disclosure was made, particularly in light of the realtor's affidavit stating that neither Davidson nor Lindfield Holdings ever told her that the property "was under a demolition order." "Ultimate or conclusory facts and conclusions of law cannot be utilized on a summary judgment motion." (Citations and punctuation omitted.) *Lubbers v. Tharpe & Brooks, Inc.*, 160 Ga. App. 709, 711 (288 SE2d 54) (1981). See also *Brooks v. Boykin*, 194 Ga. App. 854, 856 (3) (392 SE2d 46) (1990) ("Conclusory allegations are insufficient in the absence of substantiating facts or circumstances.") (citation and punctuation omitted).

[A] misrepresentation as to a matter of law is a statement of opinion only and can not afford a basis for a charge of fraud or deceit in the making of the contract. This is because all persons are presumed to know the law and therefore cannot be deceived by erroneous statements of law. Since zoning is a legislative function of the county, whether land has been zoned, and if so, the uses which may be made of the land under the applicable law or ordinance are a matter of law and therefore cannot serve as a basis for a fraud action.

(Citations, punctuation and footnotes omitted.) *Lakeside Investments Group v. Allen*, 253 Ga. App. 448, 450 (1) (559 SE2d 491) (2002). This "rule applies regardless of whether the seller or agent has concealed *or* misrepresented the zoning status." (Emphasis in original.) *Howard v. Barron*, 272 Ga. App. 360, 363 (1) (612 SE2d 569) (2005). In this case, the record shows that the property's zoning classification precluded multi-family housing and that a process existed for a potential buyer to verify whether a particular piece of property has been granted a legal non-conforming use. Additionally, the contract expressly provided that the seller's obligation to convey good and marketable title was subject to zoning.

As in *Hill v. Century 21 Max Stancil Realty*, 187 Ga. App. 754 (371 SE2d 217) (1988), "[t]here is no evidence whatsoever that [the buyer] attempted to ascertain for [itself] the zoning status of the property prior to closing, even though [the buyer]

16

allege[s] the zoning status was critical to the purchase of the property." Id. at 755 (2) (affirming grant of summary judgment to defendants on buyer's claim for fraud). "[A] buyer cannot show justifiable reliance where the alleged misrepresentation concerns a matter of public record that is readily ascertainable upon inquiry." *Lakeside Investments*, 253 Ga. App. at 450 (1). Based upon these undisputed facts, the trial court did not err by granting summary judgment on this portion of the buyer's fraud claim. Id.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Andrews, J., concur.*