A09A0785. FOUR SEASONS HEALTHCARE, INC. et al.
v. WILLIS INSURANCE SERVICES OF GEORGIA, INC.

(682 SE2d 316)

ANDREWS, Presiding Judge.

Four Seasons Healthcare, Inc., Healthfield Holdings, Inc., Healthfield, Inc., and Rodney Windley sued their insurance broker, Willis Insurance Services of Georgia, Inc., alleging that they hired Willis to procure directors and officers (D & O) liability insurance sufficient to cover any claim that might arise out of a pending business transaction, and that Willis negligently failed to procure insurance sufficient to cover the claim that later arose. All four insureds appeal from the trial court's grant of summary judgment in favor of Willis. For the following reasons, we affirm.

The suit involved two AIG insurance policies procured by Willis. One was a new policy that provided D & O coverage for Four Seasons effective March 9, 2001, and the second was an existing D & O policy for Healthfield Holdings (which also named Healthfield, Inc. and Windley as additional insureds) that was extended for three years to provide additional D & O coverage. After the insureds' pending business transaction was finalized, a claim arose out of the transaction, and the insureds called on AIG to provide D & O coverage for the claim under both policies.

The business transaction and the resulting claim involved all four insureds. Windley was the chief executive officer of Healthfield Holdings and the chief executive officer and chairman of the board of directors of Healthfield, Inc. Healthfield Holdings' only substantial asset was ownership of all of Healthfield, Inc.'s stock, which was in foreclosure after Healthfield Holdings defaulted on a note for which the stock was collateral. Windley incorporated Four Seasons for the purpose of buying Healthfield, Inc.'s stock at foreclosure. After Four Seasons bought the stock at the foreclosure sale on March 9, 2001, a

group of Healthfield Holdings shareholders (owning more than 5 percent of the voting stock) filed suit on November 21, 2001, against Four Seasons, Healthfield Holdings, Healthfield, Inc., and Windley, alleging that they were wrongfully frozen out by the stock purchase and transfer of corporate assets to Four Seasons. See *APA Excelsior III, L.P. v. Windley*, 329 FSupp.2d 1328 (N.D. Ga. 2004).

AIG denied D & O coverage under both policies for the claim asserted in the shareholders' suit. As to the policy insuring Four Seasons, AIG relied on the fact that the policy excluded coverage for prior acts (acts occurring prior to the March 9, 2001 effective date of the policy). As to the policy insuring Healthfield Holdings (and naming Healthfield, Inc. and Windley as additional insureds), AIG relied on the fact that the policy excluded coverage for claims brought by shareholders owning more than 5 percent of the insured's voting stock (the 5 percent major shareholder exclusion). None of the insureds challenged AIG's denial of coverage, and it is undisputed that the policies excluded coverage for the shareholders' claim. The negligence suit brought by the insureds against Willis sought damages for amounts paid to the shareholders to settle the uncovered claim plus attorney fees paid to defend the claim.

Willis moved for summary judgment on various grounds, and the trial court summarily granted the motion without setting forth reasons. The record shows that Willis was entitled to summary judgment on at least two of the grounds asserted in its motion. First, even assuming that Willis was negligent because it failed to procure the requested insurance coverage or to adequately explain the coverage, recovery was barred because Four Seasons knew about and requested the prior acts exclusion in its policy, and Healthfield Holdings, Healthfield, Inc., and Windley failed in their duty to read and discover the plain and unambiguous 5 percent major shareholder exclusion in their policy. Second, because there is no evidence in the record that Willis could have procured the Healthfield Holdings D & O policy without the 5 percent major shareholder exclusion, there is an absence of evidence to prove an essential element of the negligence claim — that Willis' alleged negligence proximately caused the lack of coverage.

Despite specific recommendations by Willis that Four Seasons include "prior acts" coverage in its D & O policy, Four Seasons rejected this advice and refused "prior acts" coverage because it concluded that there was no need for the coverage. Accordingly, Four Seasons was well aware that its D & O policy excluded coverage for claims based on acts that the shareholders' suit alleged occurred prior to the March 9, 2001 effective date of the policy. The other D & O policy insuring Healthfield Holdings (and naming Healthfield, Inc. and Windley as additional insureds) included a "5% major share-

holder exclusion," which provided:

> In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against any Insured(s) which are brought by any individual(s) or entity(ies) that own or control (whether beneficially, directly or indirectly) 5% or more of the outstanding voting stock (hereinafter "Major Shareholder"); or by any security holder of the Company whether directly or derivatively, unless such security holder's Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of any Major Shareholder.

This provision plainly excluded coverage for any "Loss" (defined under the policy to include damages from judgments, settlements, and defense costs) connected with a claim against an insured brought by shareholders owning 5 percent or more of the voting stock, or by any security holder of the "Company." Under the policy, the term "Company" referred to the named insured, Healthfield Holdings and additional subsidiary insureds. The provision clearly excluded coverage for any loss connected with the suit brought by over 5 percent of Healthfield Holding's shareholders. The policy insureds do not contest the plain effect of this exclusion. In fact, they virtually conceded this point by making no challenge to AIG's denial of coverage. Rather, they claim that they were unaware of the exclusion and that Willis negligently failed to obtain a policy without the exclusion or to adequately advise them about the contents of the policy.

The general rule applicable to the insureds' claims is set forth in this Court's whole court decision in *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 4 (427 SE2d 18) (1992). "[W]here the agent does procure the requested policy and the insured fails to read it to determine which particular risks are covered and which are excluded, the agent is thereby insulated from liability, even though he may have undertaken to obtain 'full coverage.'" *Washburne*, 207 Ga. App. at 4 (citation and punctuation omitted). The rule is based on the requirement that

> [an insured] who has the policy in his possession prior to the uninsured loss is charged with the knowledge of the terms and conditions of the policy, namely and in particular that the policy coverage was not as contracted for between the parties. Consequently the [insured] being, under the law, charged with knowing the terms and conditions of the

policy, any negligence, if any, on the part of the defendant in failing to procure the amount or type of insurance coverage contracted for could have been avoided by the [insured] and therefore a finding for the defendant is demanded.

*England v. Georgia-Florida Co.*, 198 Ga. App. 704-705 (402 SE2d 783) (1991) (citations and punctuation omitted). On May 7, 2001, prior to the shareholders' November 21, 2001 suit, a copy of the updated Healthfield Holdings policy was provided to the insureds, and an insurance binder was provided to Four Seasons evidencing the new policy that Four Seasons already knew excluded the prior acts coverage it had specifically rejected. Accordingly, the three insureds under the Healthfield Holdings policy were charged with knowledge of the exclusion in the policy in their possession, and Four Seasons was either charged with knowledge of or actually knew about the policy exclusion in its policy. Under the general rule, the insureds' knowledge insulated Willis from liability on the negligence claims and entitled Willis to summary judgment. *Washburne*, 207 Ga. App. at 4; *England*, 198 Ga. App. at 704-705; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The *Washburne* decision, however, recognizes an exception to the general rule in circumstances

> where the agent, acting in a fiduciary relationship with the insured, holds himself out as an expert in the field of insurance and performs expert services on behalf of the insured under circumstances in which the insured must rely upon the expertise of the agent to identify and procure the correct amount or type of insurance.

*Washburne*, 207 Ga. App. at 4; *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 271 (210 SE2d 801) (1974). Under these circumstances, the insured is not required to minutely examine the policy. *Washburne*, 207 Ga. App. at 4; *Wright Body Works*, 233 Ga. at 271. But *Washburne* makes clear that, even in these circumstances, the insured is not relieved of all responsibility to examine the policy. If an examination of the policy would have made it "readily apparent" that the requested coverage was not contained in the policy, then the exception does not apply, and the agent who acted in a fiduciary capacity and gave expert advice relied upon by the insured remains insulated from liability under the general rule. *Washburne*, 207 Ga. App. at 4-5; *Turner, Wood & Smith v. Reed*, 169 Ga. App. 213, 214-215 (311 SE2d 859) (1983). A policy provision is "readily apparent" upon examination if it is "plain and unambiguous." *MacIntyre & Edwards v. Rich*, 267 Ga. App. 78, 81

(599 SE2d 15) (2004). We conclude that, even assuming Willis acted in a fiduciary relationship with the insureds and held itself out as an expert upon which the insureds relied to identify and procure the requested insurance, the exception to the general rule does not apply. Because Four Seasons had actual knowledge of the "prior acts" exclusion it requested in its policy, and the "5% major shareholder" exclusion in the other policy was plain and unambiguous, both exclusions were "readily apparent." Therefore, the insureds were charged with knowledge of the exclusions and barred from recovery under the general rule. *Washburne*, 207 Ga. App. at 4-5.

Willis was entitled to summary judgment for an additional reason on the claim that it negligently failed to procure coverage without the 5 percent major shareholder exclusion under the Healthfield Holdings D & O policy. An insured cannot recover on a negligence cause of action against an insurer without evidence sufficient to support an essential element of the action — that the insurer's negligence was the proximate cause of the loss for which the insured seeks recovery. *Peagler & Manley Ins. Agency v. Studebaker*, 156 Ga. App. 786 (275 SE2d 385) (1980). To establish that an insurer's negligent failure to procure requested coverage was the proximate cause of an uncovered loss, the insured must produce evidence that the requested coverage was available and could have been procured. See *Tri-Town Marine v. J. C. Milliken Agency*, 924 A2d 1066, 1069-1070 (Me. 2007); *Bayly, Martin & Fay v. Pete's Satire*, 739 P2d 239, 242-244 (Colo. 1987). Because there is an absence of any evidence in the record sufficient to support a finding that the requested D & O coverage could have been procured without the 5 percent major shareholder exclusion,[1] the insureds cannot survive summary judgment against their claim that Willis negligently failed to procure insurance without the exclusion. *Lau's Corp.*, 261 Ga. at 495.

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., and Mikell, J., concur. Miller, C. J., Barnes and Ellington, JJ., dissent.*

MILLER, Chief Judge, dissenting.

The record is rife with material questions of fact regarding whether Plaintiffs' claims should be foreclosed by a duty to read their insurance policies. Plaintiffs, moreover, have otherwise presented sufficient evidence to proceed to a jury trial on their negligence claims against Willis. Accordingly, I must respectfully dissent.

1. I disagree with the majority's conclusion that the duty to read

---

[1] The Four Seasons D & O policy contained the same 5 percent major shareholder exclusion contained in the Healthfield Holdings policy.

bars Plaintiffs' negligence claims, as a matter of law, especially in light of the fact that Plaintiffs did not possess the Four Seasons policy before the Excelsior action was filed.

As we stated in *Canales v. Wilson Southland Ins. Agency*, 261 Ga. App. 529, 530 (1) (583 SE2d 203) (2003), "[g]enerally, an insured is obligated to examine an insurance policy and to reject it if it does not furnish the desired coverage." (Footnote omitted.) We went on to articulate two exceptions to the insured's general duty to read its insurance policy, stating that the duty

> does not apply when (1) the agent has held himself out as an expert and the insured has reasonably relied on the agent's expertise to identify and procure the correct type or amount of insurance or (2) the evidence reflects a special relationship of trust or other unusual circumstances which would have prevented or excused the insured of his duty to exercise ordinary diligence.

(Punctuation and footnote omitted.) Id. at 530-531 (1). The record here raises material factual questions regarding the application of the exceptions.

(a) Reliance on Willis as expert. Willis admits in its answer that it possesses "special knowledge and expertise in certain aspects of insurance." Evidence in the record demonstrates that, while the parties hotly dispute whether Plaintiffs provided Willis with the information it needed to give sound advice (such as the Four Seasons acquisition agreement), Willis undertook to provide advice to Plaintiffs about how to structure their D & O program. For example, following the parties' initial conference call regarding procurement of insurance relative to the change in control of Healthfield, Willis' Glenn Dockery sent an email to several Willis representatives stating:

> [T]here are several issues which need to be addressed in connection with [Four Seasons'] acquisition of [Healthfield]. First, if [Four Seasons] only acquired the assets of Healthfield there would not be, based upon the minimal amount of information we have been provided to date, any need for Four Seasons to purchase D&O insurance with prior acts coverage. Secondly, if Four Seasons assumed both the assets and liabilities of Healthfield, there is a definite need to purchase D&O insurance with full prior acts coverage retroactive to the date of incorporation of Healthfield. There are two alternatives in this regard. The current Healthfield D&O policy can be converted into runoff (often-

times referred to as extended discovery, tail, etc.) for a term of up to seven years. The other alternative is to include prior acts coverage for the predecessor company under the Four Seasons D&O policy. The former approach is preferred for a number of obvious reasons. . . .

Willis forwarded Dockery's email to Plaintiffs. The record also shows that Willis indicated its expertise by sending Plaintiffs various articles Dockery had written regarding D & O coverage.

Windley testified that Plaintiffs engaged Willis "to provide D & O coverage for Four Seasons and to determine how best to assure that the directors and officers of Four Seasons and Health-field would have 'seamless' D & O coverage, without gaps, that would not be impacted" by the Healthfield acquisition. There is at least some evidence that Willis was aware that Plaintiffs' relationship with the minority shareholders who commenced the Excelsior action was "strained."

I disagree with Willis that Plaintiffs cannot establish reliance on its expertise given their failure to follow Willis' final coverage recommendation. While Windley testified that Plaintiffs, for business reasons, chose to purchase three rather than the recommended seven years of tail coverage[2] under the Healthfield Holdings policy, such testimony demonstrates that Plaintiffs departed from Willis' recommendation as to duration of coverage, not type. Willis contends that Windley's deposition testimony also shows that Willis ultimately recommended that Plaintiffs purchase tail coverage under the Healthfield Holdings policy *and* prior acts coverage under the Four Seasons policy. In his deposition, Windley agreed with Willis' counsel that during the parties' final conference call on April 19, 2001, Willis had "also [recommend]ed . . . that Four Seasons purchase prior acts coverage." In light of Dockery's March 26, 2001 e-mail, however, it is unclear whether Windley was indicating that Willis recommended prior acts coverage in addition to or as an alternative to tail coverage. In addition, Willis does not cite to testimony by its own representatives that its final recommendation included prior acts coverage. Willis' correspondence with Plaintiffs following the parties' final conference call does not indicate that Willis recommended prior acts coverage.[3] In short, fact issues exist regarding the nature of and Plaintiffs' reliance on Willis' final

---

[2] Tail coverage would allow the insureds under the Healthfield Holdings policy to seek coverage for claims arising from wrongful acts occurring prior to the change in control of Healthfield but discovered during a certain "discovery period" thereafter.

[3] Willis representatives claimed that they learned for the first time during the parties' final conference call that Four Seasons had assumed $40,000,000 in Healthfield's liabilities. Windley, however, testified that Plaintiffs had informed Willis about Four Seasons' assumption

coverage recommendation.

Under Georgia law, however, even if an insured relies on an agent's or broker's expertise, the duty to read still may bar a claim to the extent that an "examination of the policy would have made it readily apparent that the coverage requested was not issued." (Citation, punctuation and footnote omitted.) *Heard v. Sexton*, 243 Ga. App. 462, 463 (532 SE2d 156) (2000); accord *Traina Enterprises v. Cord & Wilburn, Inc. Ins. Agency*, 289 Ga. App. 833, 837 (2) (658 SE2d 460) (2008). I do not think that the lack of coverage for the Excelsior action would have been "readily apparent" to Plaintiffs by reading the Healthfield Holdings policy, the only policy Plaintiffs had before the Excelsior action was filed.

The insured versus insured exclusion contained in Section 4 (i) of the Healthfield Holdings policy, as amended by Endorsement 16, provides:

> The insurer shall not be liable to make any payment for Loss in connection with a Claim made against an insured: . . .
> (i) which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without solicitation of, or assistance of, or active participation of, or intervention of, any Insured; . . .

Willis does not explain why the application of this exclusion should have been clear.[4] The fact that this exclusion requires reference to the body of the policy and a detailed endorsement undercuts the argument that it is readily apparent. The major shareholder exclusion, contained in Endorsement 6 to the Healthfield Holdings policy, states:

> It is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against any Insured(s) which are brought by any

---

of liability previously. While Willis argues that its final coverage recommendation changed after it learned about the assumption of liabilities, it is notable that none of the Willis representatives ever explained how.

[4] At Windley's deposition, Willis' counsel attempted to elicit an admission from Windley that he understood Section 4 (i) to exclude coverage for claims "by an insured of the company against another insured of the company." Plaintiffs' response to Willis' statement of undisputed facts indicates that, in fact, AIG claimed that the exclusion applied because a former Healthfield officer and director was aiding the prosecution of the Excelsior action. If Willis does not understand why the insured versus insured exclusion applies, I am unwilling to conclude that its meaning should have been readily apparent to Plaintiffs.

individual(s) or entity(ies) that own or control (whether beneficially, directly or indirectly) 5% or more of the outstanding voting stock (hereinafter "Major Shareholder"); . . .

Given the placement of a semicolon after the term "Major Shareholder," the provision is not entirely clear as to the entity or entities in which a "Major Shareholder" owns or controls 5 percent or more of the voting stock.

Even if these exclusions, standing alone, were clear, I do not think that their ramifications under the circumstances here were readily apparent in that Plaintiffs also would have needed to review and consider the exclusions in conjunction with the tail coverage endorsement to the Healthfield Holdings policy and the prior acts exclusion to the Four Seasons policy, which they did not yet possess.[5] The tail coverage endorsement extended coverage under the Healthfield Holdings policy for claims against insureds based on wrongful acts occurring prior to March 9, 2001 (the date Four Seasons acquired Healthfield) and discovered within a three-year period thereafter. The prior acts exclusion in the Four Seasons policy excluded coverage for claims based on wrongful acts occurring prior to March 9, 2001. The policy scheme put in place contemplated that coverage under the Four Seasons policy would pick up where coverage under the Healthfield Holdings policy left off.[6] Because of the insured versus insured and major shareholder exclusions, the continuity in coverage Plaintiffs claim they expected with respect to claims such as those in the Excelsior action did not materialize. We are not prepared to say the interplay of these policy provisions was readily apparent.

(b) Special relationship of trust. As to the second *Canales* exception, fact issues exist as to whether Willis and Plaintiffs had a special relationship of trust in that Willis acted as Plaintiffs' agent and fiduciary. "Independent agents or brokers are generally considered the agent of the insured, not the insurer." (Citation omitted.) *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678 (2) (445 SE2d 791) (1994). Although a number of these facts are disputed heavily, the record contains some evidence that Plaintiffs twice retained Willis to assist them in procuring D & O coverage, enjoyed

---

[5] While the record shows that Plaintiffs knew that the Four Seasons policy would have a prior acts exclusion, Willis never established that Plaintiffs understood the specific terms or effect of that exclusion. For example, Plaintiffs' outside counsel testified that a prior acts exclusion was "part of this insurance nomenclature. I don't know that I know the difference between prior acts or tail or run-off or the various things." The binder for the Four Seasons policy Plaintiffs received indicated that the policy would contain a prior acts exclusion but did not contain or explain the exclusion's terms.

[6] Both policies also provided coverage for Healthfield and Windley.

a close relationship with Willis and shared business and financial information with Willis so that Willis could recommend coverage. Further, at least with respect to the initial placement of the Health-field Holdings policy, Willis sought quotes from various insurers. Such facts could support a conclusion that Willis acted as Plaintiffs' agent and fiduciary. See *Pope v. Mercury Indem. Co. &c.*, 297 Ga. App. 535, 540-541 (3) (677 SE2d 693) (2009); *European Bakers, Ltd. v. Holman*, 177 Ga. App. 172, 174-175 (2) (338 SE2d 702) (1985).[7]

2. I also would find that Plaintiffs, via their expert's affidavit and otherwise, have presented sufficient evidence to proceed on their negligence claims. While I do not dispute the deficiency of record evidence showing that Willis could have obtained a different policy for Healthfield Holdings initially in 2000, I believe that issues of fact exist as to whether Willis was negligent in 2001 in failing to discuss these exclusions with Plaintiffs or to recommend measures to alleviate the coverage deficiencies, for example, purchasing prior acts coverage.

For the reasons set forth above, I would reverse the trial court's order granting Willis' motions for summary judgment.

I am authorized to state that Judge Barnes and Judge Ellington join in this dissent.

DECIDED JULY 15, 2009 ▪▪▪▪

*Greenberg Traurig, Jonathan K. Waldrop, Michael J. King*, for appellants.

*Epstein, Becker & Green, Kenneth G. Menendez, Jeffery R. Saxby*, for appellee.

---

[7] *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 4-5 (427 SE2d 18) (1992), holds that even when an agent or broker upon whose expertise and insured relies acts as the insured's fiduciary, the insured retains a duty to ascertain "readily apparent" coverage deficiencies. Even so, as discussed, the coverage deficiency here was not readily apparent.