HON. LISA GODBEY WOOD, JUDGE
Before the Court is Defendant USI Insurance Services National, Inc.'s Converted Motion for Summary Judgment. Dkt. No. 8. The Motion has been fully briefed and is ripe for review. For the reasons set forth below, Defendant's Motion is GRANTED .[1]
BACKGROUND
This case involves an insurance policy requested by Plaintiff Brazell Holdings, LLC, and obtained with the help of Defendant USI Insurance Services National, Inc.[2] as an insurance broker. Plaintiff is the owner of nine Subway Restaurants. Dkt. No. 12 ¶ 6.[3] As a part of its franchise agreement, Plaintiff is required to maintain insurance on each of its nine restaurants. Id. ¶ 7. The agreement also requires that such insurance satisfy certain "Gold Standard Insurance Program Requirements," such as sufficient personal property and construction or buildout coverage. Id. ¶ 8. As such, franchise owners are generally required to purchase "Gold Standard Insurance" through a "Gold Standard Broker." Id.; Dkt. No. 34-1 at 5. Defendant is listed as, and holds itself out as, a "Gold Standard Broker." Dkt. No. 12 ¶ 9. To participate in this program, a Subway franchisee would complete a "Gold Standard Application" to three participating brokers. Dkt. No. 33-1 ¶ 5.
In August of 2017, an employee of Plaintiff, Katrina Bell, contacted Defendant for an insurance quote. Dkt. No. 33-2. To obtain this quote, Plaintiff submitted its "Gold Standard Application" that listed detailed *1257 information about each of its nine Subway stores and requested certain types of insurance coverage. Id. at 4-11.[4] In the application, Plaintiff requested wind coverage for all nine locations. Id. Furthermore, in the application Plaintiff listed its restaurant located at 2903 Glynn Avenue, Brunswick, GA 31520 as "Store #3" and its restaurant located at 5008 New Jesup Highway as "Store #4." Id. The application also listed each restaurant's "Subway. Store #" as a four or five-digit number in each of the nine store's columns in the spreadsheet-formatted application-10623 for the Glynn Avenue location and 14691 for the New Jesup Highway location. Id. Plaintiff alleged in the Complaint that the store location numbers such as "Store #3" and "Store #4" reflected the numbers that Plaintiff used internally to refer to the stores, and Plaintiff used these numbers continuously since those stores came under Plaintiff's ownership. Id. ¶ 13.[5] Using the information provided by Plaintiff in the "Gold Standard Application," Defendant prepared and submitted, on Plaintiff's behalf, a "Commercial Insurance Application" to Nationwide Insurance ("Nationwide"). Id. ¶ 14-15; Dkt. No. 20-2.
On page four of the Commercial Insurance Application, under a section entitled "Addresses," in an unnumbered list, Defendant listed the nine addresses in the same order as the store locations listed on the Gold Standard Application completed by Plaintiff. Dkt. No. 20-2 at 4. However, beginning on page eight of the application, under the section entitled "Schedule" in which the application listed the specific details and coverage requests for the different store locations, Defendant renumbered the nine store locations as follows: "Location 1-1," "Location 2-1," etc. Id. at 8-24; Dkt. No 12 ¶ 19. As a result, the Glynn Avenue location was listed as "Location 4-1" and the New Jesup Highway location was listed as "Location 5-1," instead of "Store #3" and "Store #4" as listed in the Gold Standard Application. Dkt. No. 20-2 at 14, 16; Dkt. No. 33-2 at 4-12. Additionally, on page 27 of the Commercial Insurance Application, under the section entitled "Additional Interests," the Glynn Avenue location was listed as "Premise 4," and the New Jesup Highway location was listed as "Premise 5." Id. at 27. At that time, Plaintiff was unaware that Defendant changed the location numbers from the Gold Standard Application to the Commercial Insurance Application. Dkt. No. 12 ¶¶ 19-20.
On August 11, 2017, Defendant's account manager, Virginia Dalton, emailed an insurance quote from Nationwide to Plaintiff. Dkt. No. 12 ¶ 17. The email summarized the coverage in the quote stating that "[l]ocations 1,2,3,5,6,7, 8 have a 5% wind/hail deductible, Location 4 Wind is excluded and the last location has no wind deductible." Dkt. No. 8-2 at 2; Dkt. No. 33-5. The email also included a copy of the Nationwide quote, the "Commercial Insurance Proposal," stating that "[w]e are pleased to provide the attached Businessowners Quote." Id. at 1-3. Page nine of the quote listed "Location 4-1" as the *1258 Glynn Avenue location and described that location's coverage. Dkt. No. 33-5 at 18. Under the description of coverage for Location 4-1, the Glynn Avenue location, the quote listed a "Windstorm or Hail Exclusion." Id. at 19. Despite the actual wording of the quote received by Plaintiff showing Location 4-1 to be the Glynn Avenue location, Plaintiff alleges that it interpreted "Location 4 Wind is excluded" in the email to mean that wind coverage would be excluded only for the New Jesup Highway restaurant, instead of the Glynn Avenue location as stated in the policy quote. Dkt. No. 12 ¶ 18. Plaintiff further alleges that because it was unaware that Defendant renumbered the Glynn Avenue store as "Location 4-1" in the "Schedule" section of the application and the quote, it was also unaware that the Nationwide policy excluded wind coverage for that restaurant instead of the New Jesup Highway Location. Id. ¶ 19-20; Dkt. No. 34-1 ¶¶ 9-10.
About thirty minutes after receiving the insurance quote, Ms. Bell emailed Ms. Dalton stating that "I'm not showing contamination covered under the quote you sent me. Can you point me in the right direction to find it?" Dkt. No. 33-6 at 2. Ms. Dalton responded stating that "Food Contamination is included in the Plus Endorsement (see attachment 1). On the Proposal see Page 3," and she attached the specific page of the policy that included contamination coverage to the email. Id. Later that afternoon, Ms. Dalton sent a revised quote explaining that "[b]ecause #51234 [i.e. Location 9-1 in the policy quote] was included in the wind claim, Nationwide has revised the quote to apply 5% wind deductible to this location. Premium is revised to $ 12,056." Dkt. No. 33-8. This second quote was otherwise identical to the first quote in regard to the location numbers and the wind coverage exclusion for the Glynn Avenue location-Location 4-1. Dkt. No. 33-7 at 19-20.
On August 28, 2017, Ms. Bell emailed Ms. Dalton asking that Ms. Dalton "go ahead and bind coverage on the Nationwide quote today, please," and Ms. Dalton responded that she would "bind coverage today and have the certificates prepared and sent out as soon as possible." Dkt. No. 33-8 at 2-3. Less than two weeks after Plaintiff purchased the policy and Defendant bound coverage, Hurricane Irma caused significant damage to the Glynn Avenue Subway restaurant. Dkt. No. 12 ¶ 22. At the time that the hurricane struck, Plaintiff had not yet received a copy of the insurance policy. Id. ¶ 23; Dkt. No. 34-1 ¶ 6. After timely notifying Nationwide of the loss caused by the hurricane, Plaintiff was informed that the wind exclusion applied to the Glynn Avenue location rather than the Jesup Highway location. Id. ¶ 24. As a result, Nationwide denied Plaintiff's claim for damages to the Glynn Avenue restaurant. Id.; Dkt. No. 33-1 ¶ 36.
Plaintiff subsequently brought causes of action against Defendant for breach of fiduciary duty, breach of contract, and negligent misrepresentation for allegedly changing the store location numbers in the insurance application such that Plaintiff was unaware that the policy did not cover wind damage to the Glynn Avenue Subway location when it purchased the policy and when Hurricane Irma damaged the restaurant. Dkt. No. 12. Defendant filed a Motion to Dismiss on July 10, 2018, pursuant to Fed. R. Civ. P. 12(b) (6) arguing that Plaintiff has failed to state a claim upon which relief can be granted. Dkt. No. 8. On January 29, 2019, the Court converted Defendant's Motion to Dismiss to a Motion for Summary Judgment to allow the parties to supplement the record with additional evidence and briefing. Dkt. No. 29. The Court will now address all of the parties briefs and evidence as part of the Motion for Summary Judgment.
*1259 LEGAL STANDARD
Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).
The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325, 106 S.Ct. 2548. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257, 106 S.Ct. 2505.
The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332, 106 S.Ct. 2548 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e) ).
DISCUSSION
I. Duty to Read
To begin, Defendant argues that Plaintiff's claims fail as a matter of law because Plaintiff had a duty to read the policy quote sent to it by Defendant and reject it if it was inaccurate or did not meet Plaintiff's needs. Plaintiff responds that it did not have a duty to read because it did not have a copy of the policy at the time of the hurricane and because two exceptions to the duty to read rule apply.
Under Georgia law, "[g]enerally speaking, an insurance agent who undertakes to procure a policy of insurance for his principal but negligently fails to do so may be held liable to the principal for any resulting loss." Atlanta Women's Club v. Washburne, 207 Ga.App. 3, 427 S.E.2d 18, 20 (1992) (citations omitted). "However, where the agent does procure the requested policy and the insured fails to read it to determine which particular risks are covered and which are excluded, the agent is thereby insulated from liability, even though he may have undertaken to obtain 'full coverage.' " Id.; see also Canales v. Wilson Southland Ins. Agency, 261 Ga.App. 529, 583 S.E.2d 203, 204 (2003) ("Generally, an insured is obligated to examine *1260 an insurance policy and to reject it if it does not furnish the desired coverage.").
Two exceptions apply to this "duty to read" rule. First, "where the agent, acting in a fiduciary relationship with the insured, holds himself out as an expert in the field of insurance and performs expert services on behalf of the insured under circumstances in which the insured must rely [up]on the expertise of the agent to identify and procure the correct amount or type of insurance." Atlanta Women's Club, 427 S.E.2d at 20 (citations omitted). In this situation, "the insured is relieved of the responsibility to minutely examine the policy to determine if the required coverage was included within its terms." Id. But, "[e]ven in these circumstances ... the insured is not relieved of all responsibility to examine the policy. The duty to read remains where 'an examination [of the policy] would have made it readily apparent that the coverage contracted for was not issued.' " Id. (citations omitted) (alteration in original). "A policy provision is readily apparent upon examination if it is plain and unambiguous." Four Seasons Healthcare, Inc. v. Willis Ins. Servs. of Georgia, Inc., 299 Ga.App. 183, 682 S.E.2d 316, 319 (2009) (citations and internal quotation marks omitted). Second, an exception exists "where the evidence reflects a 'special relationship of trust or other unusual circumstances which would have prevented or excused plaintiff of his duty to exercise ordinary diligence to ensure that no ambiguity existed between the requested insurance and that which was issued.' " Traina Enterprises, Inc. v. Cord & Wilburn, Inc. Ins. Agency, 289 Ga.App. 833, 658 S.E.2d 460, 464 (2008) (citations omitted).[6]
A. Plaintiff is not absolved of the duty to read simply because it did not have a copy of the policy at the time of the damage
In this case, Plaintiff first argues that it did not violate any duty to read the policy because it did not have a copy of the policy until after the damage from the hurricane had already occurred. "[H]owever, ' [P]laintiff's failure to receive a copy of the insurance policy is not alone sufficient to discharge [it]' " from the duty to examine the contents of the policy. MLR Inv. Grp., LLC v. Pate Ins. Agency, Inc., No. 7:12-CV-118 HL, 2013 WL 5592517, at *4 (M.D. Ga. Oct. 10, 2013) (quoting Brasington v. King, 167 Ga.App. 536, 307 S.E.2d 16, 19 (1983) ). Moreover, courts have held insured parties to the duty to read even when they have not received the policy but are otherwise on notice of the coverage within the policy based on other items such as a renewal package, insurance application, or insurance proposal. See MacIntyre & Edwards, Inc. v. Rich, 267 Ga.App. 78, 599 S.E.2d 15, 18 (2004) (holding insured responsible under the duty to read because the insured had "received the renewal documents and had a duty to read the declaration and memorandum which set out the policy changes"); Fregeau v. Hall, 196 Ga.App. 493, 396 S.E.2d 241, 243 (1990) ("Appellee argues that he ... did not receive his copy of the policy before the loss and thus had no opportunity to examine its contents; however, the application signed by his agent clearly indicates the type of coverage to be provided." (emphasis in original));
*1261 Se. Access, LLC v. Scaffold Indus. Ins. Co. Risk Retention Grp., Inc., No. 4:09-CV-0183-HLM, 2010 WL 11601728, at *9 (N.D. Ga. Sept. 16, 2010) (holding that the insured had notice of a policy exclusion based on an insurance proposal under the Georgia rule that "[w]hen an insurance company fails to mail or deliver the insurance policy to the insured within a reasonable amount of time after its issuance, the insurance company may still rely on exclusions contained in the policy of which the insured otherwise had notice" (quotation and citations omitted)).
In this case, Plaintiff had notice because it received a copy of the insurance quote from Nationwide attached to the Defendant's email, and the description of insurance coverage in the quote matched the insurance coverage in the final policy-including the information about the Glynn Avenue location and wind damage coverage. Page nine of the Nationwide quote that was emailed to Plaintiff lists the coverage for "Location 4-1." Dkt. No. 33-5 at 18. At the top of the page, "Location 4-1" is clearly indicated as the restaurant located at "2903 Glynn Ave," and below in the coverage detail for that location, the quote states that "Location 4-1" has a "Windstorm or Hail Exclusion." Id. at 19. Additionally, Defendant specifically highlighted the wind exclusion for "Location 4" in the email containing the policy quote stating that "Locations 1, 2, 3, 5, 6, 7, 8 have a 5% wind/hail deductible, Location 4 Wind is excluded and the last has no wind deductible." Id. at 2 (emphasis added). After receiving the quote, Plaintiff purchased the insurance through Defendant from Nationwide. Therefore, the Georgia rules regarding an insured's duty to read the policy apply to Plaintiff in this case because Plaintiff can be charged with notice of the contents of the policy, via the quote that it had in its possession, even though the policy had not yet been sent to it. See Four Seasons Healthcare, 682 S.E.2d at 318-19 (charging a party with knowledge of a policy exclusion based on something other than the policy itself-that party's prior rejection of that exclusion). The point is that the quote clearly stated on page nine that "Location 4-1" was the Glynn Avenue location and that, at the top of page ten, wind coverage was excluded for that location. This fact was also highlighted for Plaintiff's benefit by Defendant's email. Plaintiff had a duty to read and reject this insurance quote before agreeing to be bound to it if it objected to the Glynn Avenue location not having wind damage coverage. Therefore, because Plaintiff failed to read the insurance quote and reject the lack of wind damage coverage for the Glynn Avenue location, Defendant is insulated from liability unless an exception applies.
B. The reliance on an expert exception does not apply
Plaintiff's assertion that it should be absolved of its duty to read because it relied on Defendant as an expert fails for two reasons. First, Plaintiff did not rely on Defendant's insurance expertise to procure the correct insurance. Second, even if the expert exception applied, the store numbers and wind exclusion for the Glynn Avenue location were readily apparent in the policy quote.
The expert exception does not apply here because Plaintiff has failed to show that it relied on Defendant's expert services. "To show reliance, [Plaintiff] would have to show that the agent performed expert services on [its] behalf under circumstances in which [it] had to rely on the expertise of the agent to identify and procure the correct amount of insurance." MacIntyre & Edwards, 599 S.E.2d at 18. The key issue for this exception is whether the insurance agent or broker had discretion to look at the insured's business *1262 and determine what insurance coverage is required or whether the insured requests specific coverage to be procured. See Fregeau, 396 S.E.2d at 243 (finding no evidence that the insured "relied on [the agent's] expertise to appraise the properties and ascertain the proper amount of coverage or otherwise to exercise her discretion so as to relieve [the insured] of the duty to examine the coverage obtained for him"); Greene v. Lilburn Ins. Agency, Inc., 191 Ga.App. 829, 383 S.E.2d 194, 195 (1989) (finding that where the insured "specifically requested theft coverage ... there [was] no evidence that [the agent] had any discretion in the type ... of insurance" (quotation and citation omitted)); Hunt v. Greenway Ins. Agency, 213 Ga.App. 14, 443 S.E.2d 661, 662 (1994) ("There is no evidence that the agent had any discretion in the type of insurance procured or that the proposed insured relied on the agent to decide what type of insurance was needed.").
Here, Defendant did not have discretion to decide what types of insurance coverage were needed; rather, Plaintiff told Defendant what types of coverage it wanted. Plaintiff filled out the Gold Standard Application provided by Subway and submitted it to three different insurance brokers, which included Defendant. The Gold Standard Application listed specific details about all nine of Plaintiff's stores including size, construction information, equipment value, furniture value, food and stock value, build out value, etc. Dkt. No. 33-2 at 4-12. Then, the Gold Star Application specifically requested an umbrella quote, flood insurance, and wind insurance, and it indicated that Plaintiff did not request earthquake insurance. Id. Virginia Dalton also swore in her affidavit that "[t]he [Gold Star Application] also states which insurance coverage the Subway franchised restaurants sought." Dkt. No. 33-1 at 4. The only evidence that Plaintiff highlights to show that it relied on Defendant's expertise is Plaintiff's employee asking Defendant's account manager to direct her to where food contamination coverage was located within the policy quote and the fact that Defendant summarized the coverage in the email to Plaintiff that contained the policy quote. This evidence fails to create a genuine issue of material fact on this issue because it does not show that Defendant had discretion to decide what type of insurance to procure for Plaintiff. In other words, the fact that Plaintiff's employee asked to be directed to where certain coverage was located in the quote and the fact that Defendant highlighted a couple of important coverage issues in an email does not show that Plaintiff relied on Defendant to determine, within its discretion, what type of insurance Plaintiff would need and then procure that insurance. Instead, the undisputed evidence shows that Plaintiff submitted a standard application specifically listing its stores' information and what specific coverages it wanted. Plaintiff has pointed to no evidence to rebut this point. Therefore, this exception does not apply.[7]
*1263 However, even if the Court were to find that Plaintiff did rely on Defendant's expertise, Plaintiff still had a duty to read because the store location numbers and the wind exclusion for the Glynn Avenue location were readily apparent in the policy quote. Here, the fact that "Location 4-1" was the Glynn Avenue location and the fact that that location had a wind damage exclusion is readily apparent because a quick reading of the policy quote shows that these facts are plainly and unambiguously displayed on pages nine and ten of the quote. See Dkt. No. 33-5 at 18-19 (listing "Location 4-1" as "2903 Glynn Ave" and indicating that for that location that a "Windstorm or Hail Exclusion" applies). In addition, the email from Defendant to Plaintiff highlighted this fact by indicating that "Location 4 Wind is excluded." Id. at 2; see MacIntyre & Edwards, 599 S.E.2d at 18 (holding that a memorandum highlighting a specific change to policy under the policy renewal contained "language and type which should have attracted [the insured's] attention to the fact that the coverage" had changed). Plaintiff requested wind coverage for all nine of its stores, and the notification in Defendant's email that one of the locations had wind coverage excluded should have directed Plaintiff's attention to that portion of the policy quote. See id. The Plaintiff's allegation that it understood "Location 4" to be the Jesup Highway location based on the questionnaire and its internal policies does not change the unambiguous language of the policy quote attached to the email. Moreover, the fact that the forth page of the application contained an unnumbered list of store addresses also does not change the readily apparent language of the policy quote. The main point is that despite Plaintiff's confusion of the locations and even assuming it relied on Defendant as an expert, pages nine and ten of the policy quote plainly and unambiguously delineate that "Location 4-1" was the Glynn Avenue restaurant and that that location did not have wind coverage. Therefore, for this additional reason, the expert exception does not absolve Plaintiff's duty to read.[8]
C. The special relationship or unusual circumstance exception does not apply
Plaintiff's reliance on the second exception for a relationship of trust or unusual circumstances also fails. Plaintiff specifically argues that the second exception applies because this case is an unusual circumstance based on the fact that Defendant sent Plaintiff an email and policy quote saying Location 4 had wind damage excluded without explaining to Plaintiff that Location 4 referred to the Glynn Avenue location, which Plaintiff refers to as Store #3 in its Gold Standard Application. In other words, Plaintiff cites its own confusion over the store location number as the unusual circumstance absolving it of its duty to read and reject a policy that did not meet its needs. However, Plaintiff fails to show a genuine dispute of material fact on this point because it does not demonstrate how its confusion or Defendant's allegedly negligent summary of the coverage in the policy quote email warrants a *1264 finding of unusual circumstances to justify absolving its duty to read.
Plaintiff cites Traina Enterprises, Inc. v. Cord & Wilburn, Inc. Ins. Agency arguing that an unusual circumstance exists where a broker summarizes the scope of insurance coverage in a policy in a negligent manner. 658 S.E.2d at 464. However, the facts of Traina are distinguishable. In that case, the broker prepared annual "Insurance Program summaries" and presented those summaries to the insured each policy year. Id. at 835, 658 S.E.2d 460 (internal quotation marks omitted). The court in Traina held that the "unusual circumstance" was the insurance agent's "voluntary practice of preparing a policy summary" for the insured and that a jury could find that the agent prepared the summary in a negligent manner where he noted in the summary that certain coverage was included in a renewal policy but failed to tell the insured that such coverage had changed. Id. at 838, 658 S.E.2d 460.
Here, Defendant sent a detailed policy quote, or a "Commercial Insurance Proposal," prepared by Nationwide, and in the email sending that quote, Defendant, in two sentences, highlighted the total premium cost and mentioned which locations had a wind and hail damage deductible and that "Location 4" had wind damage excluded. These two sentences highlighting a couple of important aspects of the policy quote differ significantly from a detailed program summary and presentation presented to the insured by the same agent each year. Moreover, while the agent in Traina failed to tell the insured about a reduction in a specific type of coverage included in the policy, Defendant in this case accurately highlighted for Plaintiff that wind damage coverage was excluded for Location 4 in the policy quote. The facts of this case do not warrant the label of unusual circumstance to absolve Plaintiff's duty to read. Because Traina is distinguishable and because Plaintiff has not presented any other evidence to support its assertion of the unusual circumstance exception, this exception does not apply.
Therefore, as no exception applies and because the duty to read and reject coverage falls on Plaintiff, it cannot hold Defendant liable for failing to procure wind damage coverage for the Glynn Avenue location. Construing the facts in the light most favorable to Plaintiff, the Court finds that the undisputed facts show that Plaintiff failed to examine the policy quote and see the readily apparent information that the Glynn Avenue restaurant did not have wind damage coverage and reject the policy on that basis.
II. Breach of Fiduciary Duty
Based on the foregoing discussion and Plaintiff's duty to read the policy quote and reject the policy, Plaintiff's claim for breach of fiduciary duty fails as a matter of law. Even accepting as true Plaintiff's assertion that Defendant was acting as its agent in procuring insurance coverage, Plaintiff fails to present evidence showing that Defendant breached any duty as a fiduciary to Plaintiff.[9] See Kirby v. Nw. Nat. Cas. Co., 213 Ga.App. 673, 445 S.E.2d 791, 795 (1994) ("Independent agents or brokers are generally considered the agent of the insured, not the insurer.").
*1265 Defendant did not breach a fiduciary duty to Plaintiff "[b]y failing to procure wind-damage insurance coverage for Plaintiff's Glynn Avenue Subway restaurant," dkt. no. 12 ¶ 35, because under the duty to read rule discussed above, Defendant is "insulated from liability" even though he may have "undertaken to obtain 'full coverage,' " for the Glynn Avenue restaurant since Plaintiff failed to read the policy proposal and "determine which particular risks are covered and which are excluded," Atlanta Women's Club, 427 S.E.2d at 20. Specifically, Plaintiff failed to determine that wind damage coverage was excluded for the Glynn Avenue location when an examination of the policy quote would have made that exclusion for that location readily apparent. For this same reason, Defendant did not breach a fiduciary duty to Plaintiff "[b]y failing to notify Plaintiff that such coverage had not been obtained." Dkt. No. 12 ¶ 36. Rather, Defendant did notify plaintiff explicitly that "Location 4" had no such coverage and attached the full policy quote which showed, plainly and unambiguously, that "Location 4-1" was listed as the Glynn Avenue location.[10] Therefore, Plaintiff's claim under Count One for breach of fiduciary duty fails as a matter of law.
III. Breach of Contract
Plaintiff's claim for breach of contract also fails as a matter of law because Plaintiff failed its duty to read and reject the policy quote and failed to show that a valid contract existed. First, as explained above, Plaintiff failed to read the policy quote and reject it if it did not meet the Plaintiff's needs, and this duty to read rule bars Plaintiff's breach of contract claim as well. See Payne v. Middlesex Ins. Co., 259 Ga.App. 867, 578 S.E.2d 470, 471 (2003) ("[A]n insurance policy is a contract, and 'parties to a contract are presumed to have read their provisions and to have understood the contents.' " (citations omitted)); Atlanta Women's Club, 427 S.E.2d at 20 ("The duty to read remains where an examination [of the policy] would have made it readily apparent that the coverage contracted for was not issued." (alteration in original)); Serv. Merch., Inc. v. Johnson & Higgins of Georgia, Inc., 966 F.2d 1454 (6th Cir. 1992) (holding that under Georgia law for breach of contract claims against insurers, "[i]nsureds are not allowed to assume a policy provides for something which it in fact does not, and then recover from the party contractually responsible for procuring the proper coverage").
In addition to the duty to read, Plaintiff's breach of contract claim fails for an additional reason: Plaintiff failed to present evidence that a valid contract existed in this case. In Georgia, the elements of a breach of contract claim are "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." Brooks v. Branch Banking & Tr. Co., 107 F.Supp.3d 1290, 1295 (N.D. Ga. 2015) (citation omitted). Further, "a plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." Id. at 1296 (citation omitted).
Here, Plaintiff fails to rebut Defendant's argument that no valid contract existed between the parties. Defendant argues that there is no evidence supporting the existence of a contractual relationship between Plaintiff and Defendant, and therefore, the breach of contract claim must fail. In response, Plaintiff cites to *1266 Jim Anderson & Co. v. ParTraning Corp., 216 Ga.App. 344, 454 S.E.2d 210 (1995), for the proposition that "[b]y denying summary judgment on the contract claim, the Georgia Court of Appeals plainly recognized that an insurance agent can be liable in contract for failing to procure coverage sought by an insured." Dkt. No. 34 at 13. Plaintiff failed to rebut Defendant's assertion that no evidence exists of a contract between Plaintiff, the insured, and Defendant, the broker, in this case. Defendant met its burden at the summary judgment stage to show that no genuine dispute of material fact exists for this claim because no evidence exists of a contract. In response, Plaintiff did not point to any evidence of a contractual relationship. Rather, Plaintiff merely cited a Georgia case showing that the judge did not err in denying summary judgment on the breach of contract claim in that case; it did not explain why the Court should deny summary judgment on that claim in this case. As such, Plaintiff failed to meet its burden, and because the Court finds no evidence of a contractual relationship between Plaintiff and Defendant, Plaintiff's breach of contract claims fails.
IV. Negligent Misrepresentation
Finally, Plaintiff's claim for negligent misrepresentation also fails as a matter of law. As with the breach of fiduciary duty and breach of contract claims, the negligent misrepresentation claim fails because Plaintiff failed to read and reject the policy quote. But, this claim also fails for an additional reason: Plaintiff did not present evidence supporting the elements of a negligent misrepresentation claim.
Under Georgia law, "[t]he elements of a claim for negligent misrepresentation are: '(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.' " Liberty Capital, LLC v. First Chatham Bank, 338 Ga.App. 48, 789 S.E.2d 303, 308 (2016) (citations omitted). "[J]ustifiable reliance is an essential element of a claim asserting negligent misrepresentation." Id. (citations omitted).
Here, Plaintiff fails to provide any evidence that Defendant supplied false information or that Plaintiff reasonably relied upon any alleged false information. Defendant met its summary judgment burden by asserting that no genuine dispute of material fact exists for this claim because it did not provide false information to Plaintiff and Plaintiff did not reasonably rely on that allegedly false information. In response, Plaintiff states that "Georgia courts have also held that insured may assert negligent-misrepresentation claims in cases similar to the present." Dkt. No. 34 at 13. Plaintiff then proceeds to cite three Georgia cases where parties brought negligent misrepresentation claims against insurance agents. Plaintiff concludes that "[i]n light of that caselaw, this Court should hold that Brazell Holdings has stated a negligent-misrepresentation claim sufficient to overcome a motion for summary judgment." Id. at 14. The Court cannot so hold without Plaintiff showing some evidence of the Defendant supplying false information and that the Plaintiff reasonably relied on that allegedly false information. Plaintiff points the Court to no such evidence, and therefore it fails to meet its burden.
Moreover, the Court finds that the evidence shows that Defendant's email summarizing the policy quote was not false because it accurately stated what was within the policy quote-Location 4, the Glynn Avenue location, did not have wind *1267 coverage. The Court also finds that even if the email contained false information, Plaintiff did not reasonably rely on that information because the wind exclusion for the Glynn Avenue location was readily apparent in the policy quote. In other words, Plaintiff did not perform its due diligence to look through the policy and determine if the wind exclusion was for the correct store. See Liberty Capital, 789 S.E.2d at 308 ("[T]o show justifiable reliance, the plaintiff must establish that he exercised his duty of due diligence."). After requesting wind coverage on all stores, being told that one store did not have wind coverage should at least warrant looking to the specific policy quote coverages for that specific store, but here, Plaintiff failed to observe the readily apparent information. See id. (explain that although the question of "[w]hether a plaintiff could have protected itself by the exercise of due diligence is generally a question for the jury ... an exception occurs when a plaintiff cannot offer evidence that he exercised his duty of due diligence to ascertain the truth and to avoid damage." (quotations and citations omitted)). Therefore, without a showing of supplying false information or reasonable reliance, Plaintiff's claim for negligent misrepresentation must fail.
CONCLUSION
In this case, Plaintiff had a duty to read and reject an insurance policy that did not meet its needs. The information that Plaintiff asserts it was unaware of-that the Glynn Avenue restaurant did not have wind damage coverage-was clearly indicated in the policy quote that it had in its possession from the email sent by Defendant. Plaintiff had a duty to read and reject that quote, but it failed to do so. In light of that fact, Plaintiff cannot now hold Defendant liable under any of these claims. Therefore, Plaintiff's Motion to Amend/Correct Response, dkt. no. 36, and Defendant's Converted Motion for Summary Judgment, dkt. no. 8, are GRANTED.
SO ORDERED , this 20th day of March, 2019.

The Court also GRANTS Plaintiff's Motion to Amend/Correct its Response, dkt. no. 36, and considers that amended response in this Order.

Plaintiff explains that while Wells Fargo Insurance actually served as the broker for the transaction at issue, USI has since acquired Wells Fargo Insurance. Dkt. No. 34 at 1. Both parties refer to the Defendant as "USI," and the Court will do so as well.

As the Court converted Defendant's Motion to Dismiss to a Motion for Summary Judgment, the Parties' initial statements of facts are based largely on the Complaint. The Court will cite to the Complaint for some facts recognizing that it must read all facts at this stage in the light most favorable to Plaintiff and drawing all reasonable inferences in its favor.

Defendant's account manager, Virginia Dalton, swore that the application's listing of Brown & Brown and LH Brenner, Inc. Insurance in addition to Defendant, indicated that Plaintiff submitted applications to those other brokers as well. Dkt. No. 33-1 ¶ 5. The application itself says "[o]nce complete save the document and e-mail the document to all three of the Gold Standard Brokers listed" next to the names of Brown & Brown, LH Brenner, Inc. Insurance, and USI. Dkt. No. 33-2 at 4.

However, when Defendant's account manager, Virginia Dalton, asked for updated loss runs for the stores, Ms. Bell responded by using the Subway Store numbers "29069" and "51234." Dkt. No. 33-5 at 2-3.

A third exception exists where "an agent intentionally misrepresents the existence or extent of coverage." Traina, 658 S.E.2d at 464. However, Plaintiff did not raise this exception, and the Court finds that it is inapplicable here as there is no evidence that Defendant intentionally misrepresented the insurance coverage in this case.

Plaintiff requests that if the Court rules against it on this issue that it be given more opportunity to conduct discovery on this issue because counsel for Plaintiff "believes that USI (or, more accurately, Wells Fargo Insurance) must have undergone some sort of selection process and likely made representations concerning its level of expertise in order to be approved as a 'Gold Star' broker." Dkt. No. 34 at 8. The Court declines Plaintiff's request because more discovery on that issue will not change the Court's finding. First, whether or not Subway corporate chose Wells Fargo Insurance through a selection process because Wells Fargo Insurance potentially held itself out as an expert has no bearing on whether Plaintiff, the Subway franchisee, in this instance relied on Defendant's discretion in deciding what insurance to procure in this case. Second, for the reasons stated below, even if this exception applied, Plaintiff still had a duty to read because the store location numbers and the wind exclusion for the Glynn Avenue location were readily apparent.

Also, the fact that Plaintiff's employee emailed Defendant's account manager asking to be directed to where food contamination coverage was included in the policy quote does not make the wind coverage exclusion for the Glynn Avenue location any less readily apparent. Not only was the exclusion highlighted in the email, but if Plaintiff's employee had a question about that coverage, like she did for the food contamination, she could have looked at the policy quote and emailed Defendant's account manager for clarification.

However, it is unlikely that any fiduciary relationship existed in this case because Plaintiff did not give Defendant the discretion to decide what type of insurance to select. See J. Smith Lanier & Co. v. Acceptance Indem. Ins. Co., 272 Ga.App. 789, 612 S.E.2d 843, 849 (2005), vacated in part on other grounds 283 Ga.App. 284, 641 S.E.2d 569 (2007) ("[A] broker may incur some fiduciary duties when granted discretion in the type or amount of insurance to obtain ...")

Because Plaintiff failed its duty to read, the Court need not grant Plaintiff's request for additional discovery on the relationship between Subway corporate and Defendant for the issue of breach of fiduciary duty.